1  Gary E. Klausner (SBN 69077)
**LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.**
2  10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
3  310.229.1234 (T), 310.229.1244 (F)
Email: gek@lnbyb.com

4  Eric D. Madden (admitted *pro hac vice*)
**REID COLLINS & TSAI LLP**
5  Thanksgiving Tower
1601 Elm Street, 42nd Floor
6  Dallas, Texas  75201
214.420.8900 (T), 214.420.8909 (F)
7  Email:  emadden@rctlegal.com

8  Angela J. Somers (admitted *pro hac vice*)
Anne M. Bahr (admitted *pro hac vice*)
9  **REID COLLINS & TSAI LLP**
One Penn Plaza, 49th Floor
10  New York, New York 10119
212.344.5200 (T), 212.344.5299 (F)
11  Email:  asomers@rctlegal.com; abahr@rctlegal.com

12  *Counsel for Solution Trust, as Trustee of the AWTR Liquidation Trust*

13            **UNITED STATES BANKRUPTCY COURT**
              **CENTRAL DISTRICT OF CALIFORNIA**
14                **LOS ANGELES DIVISION**

15  In re:                              | Case No. 2:13-bk-13775-NB

16  AWTR LIQUIDATION INC., f/k/a          | Chapter 11
    RHYTHM AND HUES, INC.,
17                            Debtor.     | **LIMITED OPPOSITION OF AWTR**
18                                        | **LIQUIDATION TRUST TO FORMER**
                                          | **DIRECTORS' AND OFFICERS'**
                                          | **MOTIONS [DOCKET NOS. 653 AND**
19                                        | **655] FOR RELIEF FROM THE**
                                          | **AUTOMATIC STAY TO PERMIT**
20                                        | **ADVANCEMENT OF REASONABLE**
                                          | **DEFENSE COSTS**
21
                                          | <u>Hearing</u>
22                                        | Date:   April 28, 2015
                                          | Time:   2:00 p.m.
23                                        | Place:  Courtroom 1545
                                          |         255 E. Temple Street
24                                        |         Los Angeles, CA
25

26

27

28

Solution Trust, the Liquidation Trustee (the "**Trustee**") of AWTR Liquidation Trust, the duly authorized successor-in-interest to AWTR Liquidation, Inc., f/k/a Rhythm And Hues, Inc. ("**R&H**") files this limited opposition to the Motions ("**Motions**") [Docket Nos. 653 (Goldfarb) and 655 (Feeney)] for Relief From the Automatic Stay to Permit Advancement of Reasonable Defense Costs ("**Defense Costs**") to Keith Goldfarb, Raymond Feeney and other former directors and officers of R&H ("**Defendants**" or "**D&Os**")[1] in connection with the defense of an adversary proceeding ("**Adversary Proceeding**"),[2] and respectfully represents as follows.

## PRELIMINARY STATEMENT

The Trustee submits this limited opposition to the Motions because, despite the Liquidation Trust's interest in the policy proceeds, the requested order fails to provide any mechanism either to monitor the payment of Defense Costs, or to track the effect of such payments on the remaining policy proceeds. Courts have imposed a reporting mechanism relating to the use of policy proceeds in cases such as this one. Here, there are numerous attorneys, deterioration of the policy is likely to be rapid, and the reasonableness of defense costs cannot be assessed. Thus, while the "balance" to which Defendants refer in their Motions weighs in favor of some sort of stay relief, such relief should not be unlimited. The Trustee thus requests that (a) the D&Os be required to file quarterly reports with the Court setting forth the amount of the Defense Costs paid, and in coordination with the insurer, report on the remaining policy proceeds in each of these quarterly filings; and (b) the Trust be permitted to reserve its right to object to further use of the policy proceeds pending such reporting.[3]

---

[1] The Trustee has been informed that all other Defendants will file similar motions.
[2] The applicable adversary proceeding is *Solution Trust, as Trustee of the AWTR Liquidation Trust v. John Patrick Hughes, et al.*, Adv. No. 2:15-ap-01095 (Bankr. C.D. Cal.).
[3] The Trustee is mindful of the fact that a request for relief from the automatic stay was previously granted by the Order, permitting the fees of Mr. Hughes and Ms. Ts'o to be paid. At that point in time, the Trustee had not concluded that he had actionable claims against the D&Os. Nor had the Trustee filed suit.  Further, the Trustee's concern over policy deterioration was substantially lower in light of the fact that the policy proceeds would be used to pay the defense costs of a single counsel.

# ARGUMENT

**A.    Because the Indemnity Claim Gives the Trust an Interest in the Policy Proceeds, the Modest Conditions Requested Should Be Imposed on Automatic Stay Relief.**

The D&Os of the Debtor seek authorization to utilize the proceeds of a directors' and officers' liability coverage policy ("**Policy**") issued by Chubb & Son ("**Chubb**" or "**Insurer**") to the Debtor.[4] As an initial matter, because the Policy provides coverage to the Company, it is property of the R&H estate, and now of the Liquidation Trust. *In re Minoco Group of Companies, Ltd.*, 799 F.2d 517, 518-19 (9th Cir. 1986) (finding that officers and directors liability policies are property of the estate and reasoning that "the policies also benefit [debtor] because the policies insure [debtor] against indemnity claims made by officers and directors").

Further, the D&Os acknowledge, and case law supports a determination, that the insurance policy *proceeds* also constitute property of the estate to the extent that an indemnification claim exists. *See In re Jasmine, Ltd.*, 258 B.R. 119, 128 (D.N.J. 2000) (holding that since "[the debtor's] duty of indemnification was established prior to its filing for bankruptcy by the Policy itself . . . and not merely speculative, it would have been entitled to proceeds under the Policy if there was coverage. Thus, [the debtor] had an indemnification interest in the proceeds, and the proceeds are property of the estate and subject to the authority of the trustee under these circumstances."); *In re EMS Fin. Servs., LLC*, No. 12-71324, 2013 WL 64755, at *5 (Bankr. E.D.N.Y. Jan. 4, 2013) (considering an indemnification claim and holding that "because [debtor] is a covered Insured under the Policy, and because [defendants] have filed lawsuits and proofs of claims that implicated [debtor's] coverage under the Policy, this Court holds that the [Debtor] estate has a property interest in the Policy proceeds"); *In re Sacred Heart Hosp. of Norristown*, 182 B.R. 413, 419-20 (Bankr. E.D. Penn. 1995) (holding that "an indemnification interest in proceeds is sufficient to bring those proceeds into the

---

[4] More specifically, the Policy was issued by Executive Risk Indemnity Inc./Chubb Group of Insurance Companies Policy No. 8221-6440.

[bankruptcy] estate").

Each Defendant filed a proof of claim seeking indemnification against the Debtor's estate.[5] Though little detail is afforded in these claims, the grounds for each claim will be determined through further supplementation and amendment of the claims, which is customary. While the Trustee believes that the claims are invalid, the claims nevertheless are not hypothetical, speculative or illusory, as shown by the fact that the Trust objected to them, and may spend considerable time and effort expunging or subordinating them.  In light of the proofs of claim of Defendants, and the Liquidation Trust's corresponding right to the Policy proceeds, the Trustee seeks accountability regarding the use of the remaining Policy proceeds.

With the power to lift the automatic stay comes the power to impose appropriate conditions upon such relief.  *See* 11 U.S.C. § 362(d) ("On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or ***conditioning*** such stay . . . ."); *In re Bonner Mall P'ship*, 2 F.3d 899, 902 (9th Cir. 1993) (conditioning relief from automatic stay on a certain showing by the party seeking relief); *see also Eastern Refractories Co. Inc. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir.1998) ("[B]ankruptcy courts have the plastic powers to modify or condition an automatic stay so as to fashion the appropriate scope of relief."); *In re Lopez–Soto*, 764 F.2d 23, 28 (1st Cir.1985) ("[T]he bankruptcy court retains adequate power to control the § 362(d) proceeding . . . through its . . . statutory powers to impose conditions."); *Browning v. Navarro*, 743 F.2d 1069, 1074,1084 (5th Cir.1984) (court has authority and discretion to fashion relief according to the needs in a particular bankruptcy proceeding).

---

[5] The claims were assigned the following claim numbers: Claim No. 154-1 (Goldfarb), Claim No. 155-1 (Feeney), Claim No. 156-1 (Hughes), Claim No. 157-1 (Ts'o), Claim No. 158-1 (Buyyala), Claim No. 159-1 (Berger), and Claim No. 161-1 (Weinberg).

A number of other bankruptcy courts have conditioned the lifting of the automatic stay to use policy proceeds to pay defense costs on the movant or insurer disclosing the amount of defense costs to be paid. *In re Beach First Nat'l Bancshares, Inc.*, 451 B.R. 406, 411-12 (Bankr. D.S.C. 2011) (lifting the automatic stay to permit disbursement of defense costs to movants, but ordering that the insurer must review fees to ensure the fees were proper, actually incurred, and reasonable and ordering the insurer to provide notice to the Trustee of any disbursements at least five business days before any distribution); *In re RC Liquidating Co.*, No. 05-50475, 2007 WL 329183, at *2 (Bankr. M.D.N.C. Jan. 31, 2007) (lifting the automatic stay to permit the insurance company to pay defense fees but requiring that "a copy of all billings submitted by the Law Firms to [the insurance company] be served by First Class mail on counsel for the [Unsecured Creditors' Committee] within ten business days after such billings are mailed or otherwise submitted to [the insurance company]"); *In re Arter & Hadden, L.L.P.*, 335 B.R. 666, 674-75 (Bankr. N.D. Ohio 2005) (conditioning the lifting of the automatic stay on counsel for the officers and directors  filing monthly fee applications for approval by the court); *see also In re MF Global Holdings Ltd.*, 469 B.R. 177, 197 (Bankr. S.D.N.Y. 2012) (upon consent by the parties, the bankruptcy court directed counsel to create procedures for monitoring expenditures to be satisfied with insurance policy proceeds and established a soft cap for defense costs).

Six different firms act as a counsel to the Defendants. The Trust has been informed that all of these firms seek payment of Defense Costs.  As a result, the Policy proceeds are likely to quickly deteriorate, and to the extent the Trust is forced to pay Defendants' indemnity claims, it may find that it has little or no coverage under the Policy to compensate it for the loss. A monitoring mechanism will permit the Trust to protect its rights under the Policy. Relief from

1    stay should thus be conditioned on the quarterly reporting requirements requested by the

2    Trustee.

3    **B.      The Reasonableness Requirement Should Be Enforced in a Manner Transparent to
       the Trustee.**

4
5          The Policy, a copy of which is attached hereto as **Exhibit A**,  permits the Insurer to

6    advance reasonable defense fees and costs to the D&O's counsel in conjunction with the defense

7    of an action against them. Under Article II, section (C) of the Policy, Defense Costs are defined

8    as "that part of the **Loss** consisting of ***reasonable*** costs, charges, fees (including but not limited

9    to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries

10   or fees of directors, officers or employees of the Insured Organization) incurred in defending

11   any **Claim** and the premium for appeal, attachment or similar bonds." (emphasis added to the

12   word reasonable only).

13
14         There are ***six*** different firms acting as defense counsel.  The Defendants have informed

15   the Trustee that each firm seeks, has sought, or will seek authorization for payment of its fees by

16   Chubb.  Moreover, because the coverage provided by Chubb is accompanied by various

17   reservations of rights, defense costs may mistakenly be paid to Defendants. The prompt

18   reimbursement of Policy proceeds by Defendants cannot be assured, and it is uncertain whether

19   they will be replenished for the benefit of the Liquidation Trust. Safeguards on the use of Policy

20   proceeds as set forth herein are thus necessary.

21
22                                    **CONCLUSION**

23         The Trustee does not object to the use of the Policy proceeds.  However, in light of the

24   indemnification claim, and the "reasonable" requirement contained in the Policy, some

25   accountability to the estate is necessary.  For the reasons set forth above, the Trustee

26   respectfully requests that the Court: (a) require the D&Os to file quarterly reports with the Court

27   setting forth the amount of the Defense Costs paid and the amount of the remaining Policy

28

1    proceeds; and (b) allow the Trustee to reserve his right to object to further use of the Policy

2    proceeds pending such reporting; and (c) grant such other and further relief that the Court deems

3    just and proper.

4

5    Dated:  April 14, 2015                          LEVENE, NEALE, BENDER, YOO
                                                                    & BRILL LLP
6
                                                      By:___*/s/ Gary E. Klausner*_____
7                                                         Gary E. Klausner

8                                                      -and-

9                                                      REID COLLINS & TSAI LLP
                                                        Eric D. Madden
10                                                      Angela J. Somers
                                                        Anne M. Bahr
11
                                                        *Counsel for Solution Trust, as Trustee of*
12                                                      *the AWTR Liquidation Trust*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "A"

PREMIUM BILL

Insured:    Rhythm and Hues, Inc.                                    Date:    01/30/2012

Producer:    ARC EXCESS & SURPLUS LLC
             113 SOUTH SERVICE ROAD
             JERICHO, NY 11753-0000

Company:    Executive Risk Indemnity Inc.

THIS BILLING IS TO BE ATTACHED TO AND FORM A PART OF THE POLICY REFERENCED BELOW.

Policy Number:    8221-6440

Policy Period:    January 26, 2012 to January 26, 2013

NOTE: PLEASE RETURN THIS BILL WITH REMITTANCE AND NOTE HEREON ANY CHANGES. BILL WILL BE
RECEIPTED AND RETURNED TO YOU PROMPTLY UPON REQUEST.

PLEASE REMIT TO PRODUCER INDICATED ABOVE. PLEASE REFER TO 8221-6440

| Product | Effective Date | Premium |
|---|---|---|
| PWRSRCE | 01/26/12 | $58,018.00 |
| | | |
| | | |

* For Kentucky policies, amount displayed includes tax and collection fees.

| | |
|---|---|
| **TOTAL POLICY PREMIUM** | $58,018.00 |
| **TOTAL INSTALLMENT PREMIUM DUE** | $58,018.00 |

Form 26-10-0426 (Ed. 2/98)

# POLICYHOLDER
# DISCLOSURE NOTICE OF
# TERRORISM INSURANCE COVERAGE
### (for policies with no terrorism exclusion or sublimit)
### Insuring Company: Executive Risk Indemnity Inc.

You are hereby notified that, under the Terrorism Risk Insurance Act (the "Act"), effective December 26, 2007, this policy makes available to you insurance for losses arising out of certain acts of terrorism.  Terrorism is defined as any act certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that the insurance provided by your policy for losses caused by acts of terrorism is partially reimbursed by the United States under the formula set forth in the Act.  Under this formula, the United States pays 85% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage.

However, if aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

10-02-1281 (Ed. 1/2003)

If aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

The portion of your policy's annual premium that is attributable to insurance for such acts of terrorism is: $ **-0-.**

If you have any questions about this notice, please contact your agent or broker.

10-02-1281 (Ed. 1/2003)

# IMPORTANT NOTICE TO POLICYHOLDERS

Insuring Company: Executive Risk Indemnity Inc.

All of the members of the Chubb Group of Insurance companies doing business in the United States (hereinafter "Chubb") distribute their products through licensed insurance brokers and agents ("producers").  Detailed information regarding the types of compensation paid by Chubb to producers on US insurance transactions is available under the Producer Compensation link located at the bottom of the page at www.chubb.com, or by calling 1-866-588-9478.  Additional information may be available from your producer.

Thank you for choosing Chubb.

10-02-1295 (ed. 6/2007)

# Notice of Loss Control Services

Insuring Company: Executive Risk Indemnity Inc.

As a Chubb policyholder, you have loss prevention information and/or services available to you, as described in this Notice.

### Employment Practices Liability (EPL) Loss Prevention Services

- **Chubb EPL Loss Prevention Web Site**
  For information about the program, as well as a way to access many of our available services, go to http://csi.chubb.com/epllossprevention.

- **ChubbWorks.com**
  ChubbWorks.com is a web-based platform that offers multiple services including overviews of employment laws, sample employment policies and procedures, and on-line training. To gain immediate access to ChubbWorks go to **www.chubbworks.com** and register using your policy number.

- ***Employment Practices Loss Prevention Guidelines* Manual**
  Written by Seyfarth Shaw exclusively for Chubb, this manual provides an overview of key employment issues and offers proactive ideas for avoiding employment lawsuits. To order the *Employment Practices Loss Prevention Guidelines,* simply call **1.866.282.9001,** order 14-01-0061, and provide your mailing address.

- **Loss Prevention Consultant Services**
  Chubb has developed a network of more than 120 law firms, human resources consulting firms, and labor economist/statistical firms that offer specialized services for employment issues. In addition to preferred rates for customers, Chubb will reimburse customers for 50% of the cost of the qualified services, up to 10% of the customer's insurance premium for the EPL coverage/insuring agreement. To access the network of consultants and learn more about the consultant services program, go to Chubb's EPL Loss Prevention Web site at http://csi.chubb.com/epllossprevention.

- **Toll-free Hot Line**
  Have a question on how to handle an employment situation? Simply call **1.888.249.8425** to access the nationally known employment law firm of Jackson Lewis Schnitzler & Krupman. We offer customers an unlimited number of calls to the hot line at no additional charge.

If you have any questions on the EPL Loss Prevention program, simply consult http://csi.chubb.com/epllossprevention or email csi-info@chubb.com.

## Directors and Officers (D&O) Liability Loss Prevention Services

- **Directors and Officers Liability Loss Prevention Manual**

  Written by Dan A. Bailey exclusively for Chubb, *Directors and Officers Liability Loss Prevention* discusses general principles governing D&O liability and potential exposures for directors and officers. To order *Directors and Officers Liability Loss Prevention,* simply call **1.866.282.9001,** order 14-01-0035, and provide your mailing address.

  **Loss Prevention Guidelines for Independent Directors**

  Written exclusively for Chubb by Dan A. Bailey, this manual discusses roles played by independent directors, the increasing importance of independent directors, and corporate governance best practices.  To order *Loss Prevention Guidelines for Independent Directors*, simply call **1.866.282.9001**, order 14-01-0679, and provide your mailing address.

## Fiduciary Liability Loss Prevention Services

- **Fiduciary Liability Loss Prevention Manual**

  Written by Dan A. Bailey exclusively for Chubb, *Fiduciary Liability Loss Prevention* discusses general principles governing fiduciary liability and reviews basic fiduciary duties under ERISA. To order *Fiduciary Liability Loss Prevention,* simply call **1.866.282.9001,** order 14-01-0039, and provide your mailing address.

## Internet Liability Loss Prevention Services

- **Internet Liability Loss Prevention Manuals**

  Chubb offers the *Safety'Net$^{SM}$ Risk Management Guide* and the *Chubb CyberRisk Handbook,* in an effort to educate clients on the exposures associated with online commerce and web sites. To order the *Safety'Net$^{SM}$ Risk Management Guide*, simply call **1.866.282.9001**, order 14-01-0488, and provide your mailing address. To order the *Chubb CyberRisk Handbook*, simply call **1.866.282.9001,** order 17-01-0093, and provide your mailing address.

## Crime Loss Prevention Services

**Crime Loss Prevention Manual**

Written by KPMG LLP exclusively for Chubb, the Crime Loss Prevention Manual discusses general principles governing workplace crime exposures. To order the Crime Loss Prevention Manual, simply call 1.866.282.9001, and order 14-01-0044, and provide your mailing address.

**Kidnap/Ransom & Extortion Loss Prevention Services**

- **Kidnap/Ransom & Extortion Loss Prevention Manuals**
  Chubb offers *Managing Terrorism Risks* and *Managing Travel Risks*, written exclusively for
  Chubb by the Ackerman Group, Inc., an international security consultant. To order the
  *Managing Terrorism Risks*, simply call **1.866.282.9001,** order 14-01-0179, and provide your
  mailing address. To order the *Managing Travel Risks*, simply call **1.866.282.9001,** order 14-01-
  0178, and provide your mailing address.

---------------------

The services provided are advisory in nature. While this program is offered as a resource in
developing or maintaining a loss prevention program, you should consult competent legal counsel
to design and implement your own program. No liability is assumed by reason of the services,
access or information provided. All services are subject to change without notice.

**Notice to Purchasers of Employment Practices Liability Coverage or Fiduciary Liability Coverage**

Insuring Company: Executive Risk Indemnity Inc.

As a purchaser of an Employment Practices Liability Coverage Section and/or a Fiduciary Liability Coverage Section, please note that the Company has the right and duty to defend any Claim (as such term is defined in the Definitions section of each applicable Coverage Section) covered by each applicable Coverage Section, unless such Coverage Section has been amended by written endorsement. Defense counsel for any such Claim shall be selected by the Company from the Company's list of approved defense firms.  Please also note that, as a condition precedent to any right to coverage under each applicable Coverage Section, all Claims must be reported to the Company in writing in the manner and within the time provided in the Reporting and Notice provisions of such Coverage Section.

For a list of approved defense firms, please contact your insurance agent or broker, or access such list by using the following internet address:

http://csi.chubb.com/panel_counsel.asp

Please note that the Company reserves the right to modify such list at any time without notice.

99-10-0769 (Ed. 9/2004)

 **Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey 07059

*Power Source*<sup>sm</sup>

***General Terms and Conditions Section***

---

DECLARATIONS

**EXECUTIVE RISK INDEMNITY INC.**
a stock insurance company, incorporated under the
laws of Delaware, herein called the **Company.**

**Policy Number:** 8221-6440

THE LIABILITY COVERAGE SECTIONS (WHICHEVER ARE PURCHASED)  PROVIDE CLAIMS MADE
COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR
ANY EXTENDED REPORTING PERIOD. THE LIMIT OF LIABILITY TO PAY DAMAGES OR
SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED UNLESS OTHERWISE PROVIDED
HEREIN, BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE
DEDUCTIBLE AMOUNT.  READ THE ENTIRE POLICY CAREFULLY.

Item 1.   **Parent Corporation:**
Principal Address:

Rhythm and Hues, Inc.
2100 East Grand Avenue
El Segundo, CA 90245

---

Item 2.   **Policy Period:**

(A)    From 12:01 A.M. on      January 26, 2012
(B)    To 12:01 A.M. on      January 26, 2013
Local time at the address shown in Item 1.

---

Item 3.   Combined Maximum Aggregate Limit of Liability for all **Claims** under all **Liability Coverage Sections:**

$10,000,000.00

---

Item 4.   Liability Coverage Sections:                                        Limit of Liability

(a) Directors and Officers Liability Coverage Section Maximum          $10,000,000.00
Aggregate Limit of Liability:

(b) Employment Practices Liability Coverage Section Maximum           $3,000,000.00
Aggregate Limit of Liability:

(c) Fiduciary Liability Coverage Section Maximum                      Not Covered
Aggregate Limit of Liability:

(d) Miscellaneous Professional Liability Coverage Section Maximum     Not Covered
Aggregate Limit of Liability:

(e) Internet Liability Coverage Section Maximum                       Not Covered
Aggregate Limit of Liability:

---

**CHUBB Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey  07059

*Power Source*[sm]
*General Terms and Conditions Section*

---

**Item 5.** Liability Coverage Options

    (a) Directors and Officers Liability Coverage Section, Insuring Clause (C), Corporate Liability
        Coverage   is   ☒ is Not   ☐   available under this Policy.

    (b) Directors and Officers Coverage Section, Section IV, Additional Limit of Liability Dedicated for
        Executives is   ☒ is Not   ☐   available under this Policy.

    (c) Employment Practices Liability Coverage Section, Insuring Clause (B), Third Party Liability
        Coverage   is   ☒ is Not   ☐   available under this Policy with a Limit of Liability  $3,000,000.00

    (d) Fiduciary Liability Coverage Section, Insuring Clause (B), Voluntary Settlement Program
        Coverage   is   ☐ is Not   ☒   available under this Policy.

    (e) Fiduciary Liability Coverage Section, Section IV, Defense Outside the Limits of Liability Coverage
        Coverage   is   ☐ is Not   ☒   available under this Policy.

---

**Item 6.** Non-Liability Coverage Sections:

| | Limit of Liability |
|---|---|
| (a) Crime Coverage Section, Insuring Clause (A), Employee Theft: | Not Covered |
| (b) Crime Coverage Section, Insuring Clause (B), Premises: | Not Covered |
| (c) Crime Coverage Section, Insuring Clause (C), In Transit: | Not Covered |
| (d) Crime Coverage Section, Insuring Clause (D), Forgery: | Not Covered |
| (e) Crime Coverage Section, Insuring Clause (E), Computer Fraud: | Not Covered |
| (f) Crime Coverage Section, Insuring Clause (F), Funds Transfer Fraud | Not Covered |
| (g) Crime Coverage Section, Insuring Clause (G), Money Orders andCounterfeit Currency Fraud: | Not Covered |
| (h) Crime Coverage Section, Insuring Clause (H), Credit Card Fraud: | Not Covered |
| (i) Crime Coverage Section, Insuring Clause (I), Client Coverage: | Not Covered |
| (j) Crime Coverage Section, Insuring Clause (J), Expense Coverage: | Not Covered |
| (k) Kidnap/Ransom and Extortion Section, Insuring Clause (A), Kidnapping and Extortion Threat Coverage: | Not Covered |
| (l) Kidnap/Ransom and Extortion Coverage Section, Insuring Clause (B), Custody Coverage: | Not Covered |
| (m) Kidnap/Ransom and Extortion Coverage Section, Insuring Clause (C), Expense Coverage: | Not Covered |
| (n) Kidnap/Ransom and Extortion Coverage Section, Insuring Clause (D), Accidental Loss Coverage: | Not Covered |

---

**CHUBB**

**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey  07059

*Power Source*<sup>sm</sup>
*General Terms and Conditions Section*

---

(o) Kidnap/Ransom and Extortion Coverage Section Insuring       Not Covered
Clause (D), Accidental Loss Coverage, **Loss of Life Benefit**
**Amount**:

(p) Kidnap/Ransom and Extortion Coverage Section, Insuring
Clause (D), Accidental Loss Coverage, Mutilation Benefit
Amount: 25% of the **Loss of Life Benefit Amount.**

(q) Kidnap/Ransom and Extortion Coverage Section, Insuring
Clause (D), Accidental Loss Coverage, All Other Accidental Loss
Benefit Amount: 100% of the **Loss of Life Benefit Amount.**

(r) Kidnap/Ransom and Extortion Coverage Section, Insuring Clause       Not Covered
(E), Legal Liability Costs Coverage:

(s) Workplace Violence Expense Coverage:       Not Covered

---

**Item 7**. Non-Liability Coverage Options

(a) Crime Coverage Section, Coverage under the selected Insuring Clauses (A through J) applies as:

Loss Sustained ☐ Or Loss Discovered ☐

(b) Kidnap/Ransom and Extortion Coverage Section, Insuring Clause (F), Emergency Political

Repatriation Expense Coverage is ☐ is Not ☒ Available under this Policy, with

a Limit of Liability of:       Not Covered

---

**Item 8.** Deductible Amounts:

(a) Directors and Officers Liability Coverage Section, Insuring       $0.00
Clause (A), Individual Non-Indemnifiable Liability Coverage:

(b) Directors and Officers Liability Coverage Section, Insuring       $35,000.00
Clause (B), Individual Indemnified Liability Coverage:

(c) Directors and Officers Liability Coverage Section, Insuring       $35,000.00
Clause (C), Corporate Liability Coverage:

(d) Employment Practices Liability Coverage Section, Insuring       $100,000.00
Clause (A), Employment Practices Liability Coverage:

(e) Employment Practices Liability Coverage Section, Insuring       $100,000.00
Clause (B), Third Party Liability Coverage:

(f) Fiduciary Liability Coverage:       Not Covered

 **Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey  07059

*Power Source*<sup>sm</sup>
*General Terms and Conditions Section*

---

(g) Fiduciary Liability Coverage Section, Insuring Clause (B), Voluntary Settlement Program Coverage:   Not Covered

(h) Miscellaneous Professional Liability Coverage Section:   Not Covered

(i) Internet Liability Coverage Section:   Not Covered

(j) Crime Coverage Section, Insuring Clause (A), Employee Theft:   Not Covered

(k) Crime Coverage Section, Insuring Clause (B), Premises:   Not Covered

(l) Crime Coverage Section, Insuring Clause (C), In Transit:   Not Covered

(m) Crime Coverage Section, Insuring Clause (D), Forgery:   Not Covered

(n) Crime Coverage Section, Insuring Clause (E), Computer Fraud:   Not Covered

(o) Crime Coverage Section, Insuring Clause (F), Funds Transfer Fraud:   Not Covered

(p) Crime Coverage Section, Insuring Clause (G), Money Order and Counterfeit Currency Fraud Deductible:   Not Covered

(q) Crime Coverage Section, Insuring Clause (H), Credit Card Fraud:   Not Covered

(r) Crime Coverage Section, Insuring Clause (I), Client Coverage:   Not Covered

(s) Kidnap & Ransom Coverage:   Not Covered

(t) Workplace Violence Expense Coverage:   Not Covered

---

**Item 9.** Extended Reporting Period:

| (A)  Additional Period: | | (B)  Additional Premium: | |
|---|---|---|---|
| 365 | Day(s) | 100 | % of Annual Premium |
| N/A | Year(s) | N/A | % of Annual Premium |
| N/A | Year(s) | N/A | % of Annual Premium |

---

**Item 10.** Pending or Prior Litigation Dates:   Date

(a) Directors and Officers Liability Coverage Section Insuring Clauses (A) and (B):   January 26, 2010

(b) Directors and Officers Liability Coverage Section Insuring Clause (C):   January 26, 2010

(c) Employment Practices Liability Coverage Section Insuring Clause (A):   January 26, 2010

(d) Employment Practices Liability Coverage Section Insuring Clause (B):   January 26, 2010

(e) Fiduciary Liability Coverage Section Insuring Clause (A):   N/A

(f) Fiduciary Liability Coverage Section Insuring Clause (B):   N/A

(g) Miscellaneous Professional Liability Coverage Section:   N/A

(h) Internet Liability Coverage Section:   N/A

**CHUBB**

**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey  07059

*Power Source*[sm]
*General Terms and Conditions Section*

---

**Item 11**. Retroactive Dates:                                                           Date

    (a) Miscellaneous Professional Liability Coverage Section:          N/A

    (b) Internet Liability Coverage Section:                              N/A

---

**Item 12**. Professional Services under the Miscellaneous Professional Services Liability Coverage Section:

    N/A

---

**Item 13**. Internet Site(s) under the Internet Liability Coverage Section:

    N/A

---

**Item 14**. Other Covered Communications under the Internet Liability Coverage Section:

    N/A

---

**Item 15**.Termination of Prior Policies:

    8221-6440 (Jan 26, 2011 - Jan 26, 2012)

---

**Item 16**. Policy Form and Endorsement Editions Attached at Issuance:

    See attached Schedule of Forms

 **Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey 07059

*Power Source*sm
*General Terms and Conditions Section*

---

In witness whereof, the Company issuing this Policy has caused this Policy to be signed by its authorized
officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

**EXECUTIVE RISK INDEMNITY INC.**

_____
Secretary

_____
President

01/30/12
_____
Date

_____
Authorized Representative



**CHUBB**

*Power Source*<sup>sm</sup>
*General Terms and Conditions Section*

In consideration of payment of the premium and subject to the Declarations and the limitations, conditions, provisions and other terms of this Policy, the Company and the Insureds agree as follows:

I.    **TERMS AND CONDITIONS**

Except for these General Terms and Conditions or unless stated to the contrary in any Coverage Section of this Policy, the terms and conditions of each Coverage Section apply only to that Coverage Section. If any provision in these General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any Coverage Section, the terms and conditions of such Coverage Section shall control for purposes of that Coverage Section. Any defined term referenced in these General Terms and Conditions but defined in a Coverage Section shall, for purposes of coverage under that Coverage Section, have the meaning set forth in that Coverage Section.

II.    **GENERAL DEFINITIONS**

(A)    **Anniversary Date** means that date and time exactly one (1) year after the date and time set forth in Item 2(A) of the Declarations, and each succeeding date and time exactly one (1) year after the previous **Anniversary Date**.

(B)    **Claim** shall have the meaning ascribed to that term in each **Liability Coverage Section**.

(C)    **Coverage Event** means the event or loss which must occur, be sustained or discovered in order to invoke coverage under each **Non-Liability Coverage Section**.

(D)    **Debtor in Possession** means a debtor in possession as such term is used in Chapter 11 of the United States of America Bankruptcy Code.

(E)    **Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, officers or employees of the **Insured Organization**) incurred in defending any **Claim** and the premium for appeal, attachment or similar bonds.

(F)    **Financial Impairment** means the status of an **Insured Organization** resulting from:

(1)    the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate such **Insured Organization**; or

(2)    such **Insured Organization** becoming a **Debtor in Possession**.

(G)    **Insured** means all organizations, plans and natural persons defined as **Insureds** in each Coverage Section.

(H)    **Insured Organization** means the **Parent Corporation** and any **Subsidiary** created at any time or any **Subsidiary** acquired on or before the inception date as set forth in Item 2(A) of the Declarations, or subject to Section XI Changes in Exposure of these General Terms and



**CHUBB**

*Power Source*<sup>sm</sup>
*General Terms and Conditions Section*

Conditions, during the **Policy Period**. **Insured Organization** shall also mean any such entity as a **Debtor in Possession** or an equivalent status under the law of any other country.

(I)    **Insured Person** shall have the meaning ascribed to that term in each Coverage Section. Solely with respect to any **Liability Coverage Section**, coverage for an **Insured Person** shall also include coverage for:

    (1)    the lawful spouse of such **Insured Person**, if named as a co-defendant with such **Insured Person** solely by reason of such spouse's status as a spouse, or such spouse's ownership interest in property, which is sought by the claimant as recovery for an alleged **Wrongful Act** of such **Insured Person**; and

    (2)    in the event of the death, incapacity or bankruptcy of an **Insured Person**, the estate, heirs, legal representatives or assigns of such **Insured Person**;

but any such coverage shall apply only with respect to a **Wrongful Act** of such **Insured Person**. All terms and conditions of this Policy, including without limitation, the Deductible Amount applicable to **Loss** incurred by the **Insured Person**, shall also apply to loss incurred by such spouses, estates, heirs, legal representatives and assigns of such **Insured Person**.

(J)    **Liability Coverage Section** means the Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability, Miscellaneous Professional Liability and the Internet Liability Coverage Sections of this Policy, if purchased as set forth in Item 4 of the Declarations.

(K)    **Loss**:

    (1)    with respect to any **Liability Coverage Section**, shall have the meaning ascribed to that term in such Coverage Section; or

    (2)    with respect to any **Non-Liability Coverage Section**, means the total amount covered under such Coverage Section as a result of any **Coverage Event**.

(L)    **Non-Liability Coverage Section** means the Crime, Kidnap/Ransom and Extortion and Workplace Violence Expense Coverage Sections of this Policy, if purchased as set forth in Item 6 of the Declarations.

(M)    **Parent Corporation** means the entity named in Item 1 of the Declarations.

(N)    **Policy Period** means the period of time set forth in Item 2 of the Declarations, subject to any prior termination in accordance with Section XIX Termination of Policy of these General Terms and Conditions.

(O)    **Policy Year** means the period, within the **Policy Period**, from the date and time set forth in Item 2(A) of the Declarations to the first **Anniversary Date**, or the period from an **Anniversary Date** to its next succeeding **Anniversary Date**, subject to any prior termination as set forth in Section XIX Termination of Policy of these General Terms and Conditions.

(P)    **Potential Employment Claim** means a complaint or allegation of a **Wrongful Act** in connection with **Discrimination**, **Harassment**, **Retaliation**, **Workplace Tort** or **Wrongful Employment Decision** that does not constitute an **Employment Claim** but which may subsequently give rise to an **Employment Claim** brought by or on behalf of an **Insured Person** that is lodged with the **Insured Organization's** human resource department or other department that provides a


CHUBB

**Power Source**<sup>sm</sup>
*General Terms and Conditions Section*

function similar to a human resource department. Solely with respect to this Definition (P), the terms **Wrongful Act, Discrimination, Harassment, Retaliation, Workplace Tort, Wrongful Employment Decision, Employment Claim** and **Insured Person** shall have the meaning ascribed to them in the Employment Practices Liability Coverage Section.

(Q)   **Potential Third Party Claim** means a complaint or allegation of a **Wrongful Act** in connection with **Third Party Discrimination or Sexual Harassment** that does not constitute a **Third Party Claim** but which may subsequently give rise to a **Third Party Claim** brought by or on behalf of a **Third Party** that is lodged with the **Insured Organization's** legal department or an individual responsible to receive such complaints or allegations. Solely with respect to this Definition (Q), the terms **Wrongful Act, Third Party Discrimination or Sexual Harassment, Third Party Claim** or **Third Party** shall have the meaning ascribed to them in the Employment Practices Liability Coverage Section.

(R)   **Related Claims** means all **Claims** for **Wrongful Acts** based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.

(S)   **Subsidiary** means:

(1)   any entity during any time in which the **Parent Corporation** owns or controls, directly or through one or more **Subsidiaries**, the right to elect or appoint more than fifty percent (50%) of such entity's directors or trustees;

(2)   any limited liability company during any time in which the **Parent Corporation** owns or controls, directly or through one or more **Subsidiaries**, the right to elect, appoint or designate more than fifty percent (50%) of such entity's managers;

(3)   any corporation during any time in which the **Parent Corporation** owns, directly or through one or more **Subsidiaries**, exactly fifty percent (50%) of the issued and outstanding voting stock and which, pursuant to a written agreement with the owner(s) of the remaining issued and outstanding voting stock of such corporation, the **Parent Corporation** solely controls the management and operation of such corporation ("Controlled Joint Venture"); and

(4)   any foundation, charitable trust or political action committee during any time in which such entity or organization is controlled by the **Parent Corporation**.

(T)   **Wrongful Act** shall have the meaning ascribed to that term in each **Liability Coverage Section**.

---

III.   **TERRITORY**

Coverage shall extend anywhere in the world.

---

IV.   **EXTENDED REPORTING PERIOD**

(A)   If any **Liability Coverage Section** is either terminated or not renewed for any reason other than nonpayment of premium, any **Insured Organization** or any **Insured Person** shall have the right to purchase an Extended Reporting Period for one of the periods set forth in Item 9(A) of the



CHUBB

*Power Source[sm]*
*General Terms and Conditions Section*

Declarations. This right to purchase an Extended Reporting Period shall lapse unless written notice of the desired Extended Reporting Period, together with payment of the additional applicable premium due as set forth in Item 9(B) of the Declarations is received by the **Company** within sixty (60) days after the end of the Policy Period.

(B)     If the Extended Reporting Period is purchased, then coverage otherwise afforded by such **Liability Coverage Section** will be extended to apply to **Loss** from **Claims** first made during such Extended Reporting Period but only for **Wrongful Acts** committed or allegedly committed before the end of the **Policy Period** or the date of any conversion of coverage described in Section XI Changes in Exposure of these General Terms and Conditions, whichever is earlier. The entire additional premium for the Extended Reporting Period shall be deemed fully earned at the inception of such Extended Reporting Period.  The Limit of Liability for the Extended Reporting Period shall be part of and not in addition to the applicable Limits of Liability for the **Policy Year** immediately preceding the expiration of the **Policy Period**.

---

## V.     LIMIT OF LIABILITY

(A)     Solely with respect to all **Liability Coverage Sections**:

(1)     If the combined maximum aggregate Limit of Liability for all **Liability Coverage Sections** is purchased, as set forth in Item 3 of the Declarations, such amount shall be the combined maximum aggregate liability of the **Company** for all **Loss** from all **Claims** first made during each **Policy Year** under all **Liability Coverage Sections** combined, regardless of the number of **Claims**; provided that, the maximum aggregate liability of the **Company** for all **Loss** from all **Claims** first made during each **Policy Year** under each **Liability Coverage Section** shall not exceed the respective maximum aggregate Limit of Liability as set forth in Item 4 of the Declarations, regardless of the number of **Claims**.  If the maximum aggregate Limit of Liability of any **Liability Coverage Section** as set forth in Item 4 of the Declarations, is less than the combined maximum aggregate Limit of Liability for all **Liability Coverage Sections** as set forth in Item 3 of the Declarations, such lesser limit shall be a sublimit and such amount shall be part of, and not in addition to, the combined maximum aggregate Limit of Liability for all **Liability Coverage Sections** as set forth in Item 3 of the Declarations.

(2)     If the combined maximum aggregate Limit of Liability for all **Liability Coverage Sections** is not purchased, as set forth in Item 3 of the Declarations, the maximum aggregate liability of the **Company** for all **Loss** from all **Claims** first made during each **Policy Year** under each **Liability Coverage Section** shall be the respective maximum aggregate Limit of Liability as set forth in Item 4 of the Declarations, regardless of the number of **Claims**.

(3)     Except as otherwise expressly provided in any **Liability Coverage Section, Defense Costs** are part of and not in addition to the applicable maximum aggregate Limit of Liability as set forth in Item 4 of the Declarations and payment by the **Company** of **Defense Costs** shall reduce and may exhaust such Limit(s) of Liability.

(B)     Solely with respect to each **Non-Liability Coverage Section**, the **Company's** maximum liability shall be the respective Limit(s) of Liability described in the applicable **Non-Liability Coverage Section**.

---



*Power Source*<sup>sm</sup>
*General Terms and Conditions Section*

## VI.  DEDUCTIBLE AMOUNT

(A)   Solely with respect to any **Liability Coverage Section**:

(1)   The **Company's** liability with respect to **Loss** arising from each **Claim** covered under one or more **Liability Coverage Sections** shall apply only to that part of **Loss** which is in excess of the applicable Deductible Amount set forth in Item 8 of the Declarations. If different parts of a single **Claim** are subject to different Deductible Amounts, the applicable Deductible Amounts will be applied separately to each part of such **Claim**, but the sum of such Deductible Amounts shall not exceed the largest applicable Deductible Amount.  Such Deductible Amount shall be borne by the **Insureds** uninsured and at their own risk.

(2)   No Deductible Amount shall apply to **Loss** incurred by any **Insured Person** for which the **Insured Organization** is not permitted by common or statutory law to indemnify, or is permitted or required to indemnify, but is not able to do so by reason of **Financial Impairment**.

(3)   If the **Insured Organization** is permitted or required by common or statutory law to indemnify the **Insured Persons** for any **Loss**, or to advance **Defense Costs** on their behalf, under any **Liability Coverage Section** and fails or refuses to do so other than for reasons of **Financial Impairment**, then the **Insured Organization** shall reimburse and hold harmless the **Company** for the **Company's** payment or advancement of such **Loss** up to the amount of the applicable Deductible Amount.

(4)   In the event that:

(a)   a final adjudication with prejudice pursuant to a trial, motion to dismiss or a motion for summary judgment of any **Claim**; or

(b)   a complete and final settlement with prejudice of any **Claim**;

establishes that none of the **Insureds** in such **Claim** are liable for any **Loss**, no Deductible Amount shall apply to **Defense Costs** incurred in connection with any such **Claim**, and the **Company** will reimburse the **Insureds** for any covered **Defense Costs** paid by the **Insureds** within the Deductible Amount otherwise applicable to such **Claim**; provided that this paragraph (4) shall not apply to any (i) **Employment Claim** or **Third Party Claim** which is not a class action, or (ii) **Professional Services Claim** (as such terms are defined in the applicable **Liability Coverage Sections**).

(B)   Solely with respect to any **Non-Liability Coverage Section**:

(1)   The **Company** shall pay loss that exceeds the amount of recoveries made prior to such payment, less the Deductible Amount set forth in Item 8 of the Declarations.

(2)   If the **Insured** receives payment under another policy or bond, after applying a deductible, for loss also covered hereunder, then the Deductible Amount set forth in Item 8 of the Declarations shall be reduced by the deductible previously applied to such loss.


**CHUBB**

*Power Source*<sup>sm</sup>
*General Terms and Conditions Section*

## VII.    REPORTING

(A)    Solely with respect to any **Liability Coverage Section**:

    (1)    Any **Insured** shall, as a condition precedent to exercising their rights under any **Liability Coverage Section**, give to the **Company** written notice as soon as practicable of any **Claim**.

    (2)    If during the **Policy Period**, or any applicable Extended Reporting Period, an **Insured** becomes aware of a **Potential Employment Claim** or **Potential Third Party Claim** which could give rise to any **Employment Claim** or **Third Party Claim** (as such terms are defined in the Employment Practices Liability Coverage Section) or becomes aware of circumstances which could give rise to any **Claim**, other than an **Employment Claim** or a **Third Party Claim** (as such terms are defined in the Employment Practices Liability Coverage Section), and gives written notice of such **Potential Employment Claim**, **Potential Third Party Claim** or circumstances to the **Company** as soon as practicable thereafter but before the expiration or cancelation of this Policy, then any **Claim** subsequently arising from such **Potential Employment Claim**, **Potential Third Party Claim** or circumstances shall be considered to have been made against the **Insured** during the **Policy Year** in which the **Potential Employment Claim**, **Potential Third Party Claim** or circumstances were first reported to the **Company**.

    (3)    All **Insureds** shall, as a condition precedent to exercising their rights under this Policy, give to the **Company** such information and cooperation as it may reasonably require, including but not limited to a description of the **Claim**, **Potential Employment Claim**, **Potential, Third Party Claim** or circumstances, the nature of the alleged **Wrongful Act**, the nature of the alleged or potential damage, the names of the actual or potential claimants, and the manner in which such **Insured** first became aware of the **Claim**, **Potential Employment Claim**, **Potential Third Party Claim** or circumstances.

    (4)    All **Related Claims** will be treated as a single **Claim** made when the earliest of such **Related Claims** was first made, or when the earliest of such **Related Claims** is treated as having been made in accordance with paragraphs (2) and (3) above.

(B)    Solely with respect to any **Non-Liability Coverage Section**, reporting of a **Coverage Event** shall be in accordance with the applicable Proof of Loss and Legal Proceedings Section of each Coverage Section.

## VIII.    NOTICE

(A)    Any notice to the **Company** with respect to any Coverage Section shall designate the Coverage Section under which the notice is being given and shall be treated as notice under only the Coverage Section(s) so designated.

(B)    All notices to the **Company** under this Policy of **Claims**, **Potential Employment Claims**, **Potential Third Party Claims** or circumstances under any **Liability Coverage Section** or of **Coverage Events** under any **Non-Liability Coverage Section** shall be given in writing addressed to:


**CHUBB**

*Power Source*<sup>sm</sup>
*General Terms and Conditions Section*

      **Attn: Claims Department**
      Chubb Group of Insurance Companies
      82 Hopmeadow St.
      Simsbury, CT 06070-7683

(C)    All other notices to the **Company** under this Policy shall be given in writing addressed to:

      **Attn: Underwriting**
      Chubb Group of Insurance Companies
      82 Hopmeadow St.
      Simsbury, CT 06070-7683

(D)    Any such notice shall be effective on the date of receipt by the **Company** at such address.

---

## IX.   DEFENSE AND SETTLEMENT

(A)    Solely with respect to any **Liability Coverage Section**:

    (1)    The **Company** shall have the right and duty to defend any **Claim** covered by this Policy. Coverage shall apply even if any of the allegations are groundless, false or fraudulent. The **Company's** duty to defend any **Claim** shall cease upon exhaustion of the applicable Limit of Liability.

    (2)    The **Company** may make any investigation it deems necessary and may, with the consent of the **Insured**, make any settlement of any **Claim** it deems expedient. If any **Insured** withholds consent to any settlement acceptable to the claimant in accordance with the **Company's** recommendation (a "Proposed Settlement"), Section VI Deductible Amount (A)(4) shall not apply and the **Company's** liability for all **Loss**, including **Defense Costs**, from such **Claim** shall not exceed:

        (a)    the amount of the Proposed Settlement plus **Defense Costs** incurred up to the date of the **Insured's** refusal to consent to Proposed Settlement of such **Claim**; plus;

        (b)    seventy percent (70%) of any **Loss**, including **Defense Costs**, in excess of the amount referenced in paragraph (a) above, incurred in connection with such **Claim**; subject in all events to the applicable Deductible Amount and the available Limit of Liability set forth in the Declarations.  The remaining thirty percent (30%) of any **Loss**, including **Defense Costs**, in excess of the amount referenced in paragraph (a) above will be borne by the **Insured** uninsured and at its own risk, notwithstanding anything to the contrary contained in Section X Allocation.

    (3)    No **Insured** shall settle any **Claim**, incur any **Defense Costs**, or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the **Company's** written consent, which shall not be unreasonably withheld.  The **Company** shall not be liable for any settlement, **Defense Costs**, assumed obligation or admission to which it has not consented.


**CHUBB**

*Power Source*<sup>sm</sup>

**General Terms and Conditions Section**

(4)　　The **Company** will have no obligation to pay **Loss**, including **Defense Costs**, or to defend or continue to defend any **Claim** after the **Company's** applicable Limit of Liability with respect to such **Claim** has been exhausted by the payment of **Loss**. If the **Company's** Limit of Liability is exhausted by the payment of **Loss** prior to the expiration of this Policy, the Policy premium will be deemed fully earned.

(5)　　If the combined maximum aggregate Limit of Liability is purchased as set forth in Item 3 of the Declarations, then the **Company** will have no obligation to pay **Loss**, including **Defense Costs**, or to defend or continue to defend any **Claim** after the **Company's** combined maximum aggregate Limit of Liability has been exhausted by the payment of **Loss**. If the **Company's** combined maximum aggregate Limit of Liability is exhausted by the payment of **Loss** prior to the expiration of this Policy, the Policy premium will be deemed fully earned.

(B)　　With respect to all Coverage Sections:

The **Insureds** agree to provide the **Company** with all information, assistance and cooperation which the **Company** reasonably requests and agree they will do nothing that may prejudice the **Company's** position or its potential or actual rights of recovery.

---

**X.    ALLOCATION**

If, in any **Claim** under a **Liability Coverage Section**, the **Insureds** who are afforded coverage for such **Claim** incur an amount consisting of both **Loss** that is covered by this Policy and also loss that is not covered by this Policy because such **Claim** includes both covered and uncovered matters or covered and uncovered parties, then coverage shall apply as follows:

(1)　　**Defense Costs**:  one hundred percent (100%) of reasonable and necessary **Defense Costs** incurred by such **Insured** from such **Claim** will be considered covered **Loss**; and

(2)　　loss other than **Defense Costs**:  all remaining loss incurred by such **Insured** from such **Claim** will be allocated between covered **Loss** and uncovered loss based upon the relative legal exposures of the parties to such matters.

---

**XI.    CHANGES IN EXPOSURE**

(A)　　**Acquisition of Another Organization**

(1)　　If any **Insured Organization** acquires another entity or merges with another entity (each an "Acquired Organization") such that the **Insured Organization** is the surviving entity, and if as a result of such acquisition or merger the Acquired Organization would otherwise become a **Subsidiary**, then coverage shall be provided for such Acquired Organization and its **Insureds**, with respect to any:

(a)　　**Liability Coverage Section**: solely for **Wrongful Acts** committed or allegedly committed after the effective date of such event; or



**CHUBB**

*Power Source*<sup>sm</sup>
*General Terms and Conditions Section*

   (b)   **Non-Liability Coverage Section**: after the effective date of such event, pursuant to the Liability for Prior Losses Section of any such **Non-Liability Coverage Section**.

(2)   If, at the time of an event described in paragraph (1) above:

   (a)   the assets under management by, or the assets of, the Acquired Organization exceed twenty-five percent (25%) of the total assets under management by or the total assets of, the **Insured Organization** as reflected in the **Parent Corporation's** then most recent audited consolidated financial statements; or

   (b)   solely with respect to the Employment Practices Liability Coverage Section, if purchased as set forth in Item 4 of the Declarations, the total number of employees of the Acquired Organization exceeds twenty-five percent (25%) of the total number of employees of the **Insured Organization** immediately prior to such event;

then the **Parent Corporation** shall provide to the **Company** written notice of the event containing full details thereof, as soon as practicable, and the **Company**, in its sole discretion, may require additional terms, conditions and limitations of coverage and additional premium shall be paid.

(B)   **Cessation of Subsidiaries**

If any **Subsidiary** ceases to be a **Subsidiary** before or during the **Policy Period**, then with respect to any:

(1)   **Liability Coverage Section**: coverage under this Policy shall continue for such **Subsidiary** and its **Insureds** until the expiration of this Policy, but solely for **Claims** for **Wrongful Acts** committed or allegedly committed prior to the effective date of such cessation; or

(2)   **Non-Liability Coverage Sections**: such **Subsidiary** and its **Insureds** cease to be **Insureds** as of the effective date of such cessation, and coverage under this Policy shall apply as provided in such **Non-Liability Coverage Section**.

(C)   **Conversion of Coverage under Certain Circumstances**

If, during the **Policy Period**, any of the following events occur:

(1)   the acquisition of all or substantially all of the **Parent Corporation's** assets, by another organization, person or group of organizations or persons acting in concert, or the merger or consolidation of the **Parent Corporation** into or with another entity such that the **Parent Corporation** is not the surviving entity; or

(2)   another organization, person or group of organizations or persons acting in concert acquires securities or voting rights which results in ownership or voting control by the other organization(s) or person(s) of more than fifty percent (50%) of the outstanding securities representing the present right to vote for the election of directors, trustees, members of the Board of Managers or management committee members of the **Parent Corporation**;

coverage under this Policy shall, with respect to:


**CHUBB**

*Power Source<sup>sm</sup>*
*General Terms and Conditions Section*

(a)    any **Liability Coverage Section**:  continue until the expiration of this Policy, solely for **Claims** for **Wrongful Acts** committed or allegedly committed prior to such event;

(b)    the Crime Coverage Section:  terminate subject to Exclusions (H) and (I) of such Coverage Section;

(c)    the Kidnap/Ransom and Extortion Coverage Section: terminate subject to Exclusion (10) of such Coverage Section; or

(d)     and the Workplace Violence Coverage Section: terminate subject to Exclusion (E) of such Coverage Section.

The **Parent Corporation** shall give written notice of such event to the **Company** as soon as practicable together with such information as the **Company** may require, and the entire premium for this Policy will be deemed fully earned as of such event.

---

XII.    **REPRESENTATIONS AND SEVERABILITY**

(A)    In granting coverage to the **Insureds** under this Policy, the **Company** has relied upon the declarations and statements in the written application(s) for this Policy. Such declarations and statements are the basis of the coverage under this Policy and shall be considered as incorporated in and constituting part of this Policy.

(B)    Solely with respect to any **Liability Coverage Section(s)**, any written application(s) for coverage shall be construed as a separate application(s) for coverage by each **Insured Person**.  With respect to the declarations and statements in such application(s):

(1)    no fact pertaining to or knowledge possessed by any **Insured Person** shall be imputed to any other **Insured Person** for the purpose of determining if coverage is available; and

(2)    only facts pertaining to and knowledge possessed by the Chief Financial Officer, President, Chief Executive Officer or Chairperson of any **Insured Organization** or any other individual signing such application(s) shall be imputed to any **Insured Organization** for the purpose of determining if coverage is available.

---

XIII.    **VALUATION AND FOREIGN CURRENCY**

All premiums, limits, deductibles, loss and other amounts under this Policy are expressed and payable in the currency of the United States of America.  Except as otherwise provided in any Coverage Section, if a judgment is rendered, a settlement is denominated or any element of loss under this Policy is stated in a currency other than United States of America dollars, payment under this Policy shall be made in United States of America dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is reached, the amount of the settlement is agreed upon or any element of loss is due, respectively.



**CHUBB**

*Power Source*<sup>sm</sup>
*General Terms and Conditions Section*

---

XIV.    **SUBROGATION**

In the event of any payment under this Policy, the **Company** shall be subrogated to the extent of such payment to all the **Insured's** rights of recovery, and such **Insured** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the **Company** effectively to bring suit or otherwise pursue subrogation rights in the name of such **Insured**.

---

XV.    **RECOVERIES**

(A)    Recoveries of loss with respect to any **Claim** or **Coverage Event**, whether effected by the **Company** or by an **Insured**, less the cost of recovery, shall be distributed as follows:

(1)    first, to an **Insured** for the amount of such loss, otherwise covered, in excess of the applicable Limits of Liability;

(2)    second, to the **Company** for the amount of such loss paid to an **Insured** as covered **Loss**;

(3)    third, to an **Insured** for the Deductible Amount applicable to such loss;

(4)    fourth, to an **Insured** for the amount of such loss excluded under this Policy.

(B)    Recovery from reinsurance or indemnity of the **Company** shall not be deemed a recovery hereunder.

---

XVI.    **ACTION AGAINST THE COMPANY**

No action may be taken against the **Company** unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy. No person or entity shall have any right under this Policy to join the **Company** as a party to any action against any **Insured** to determine such **Insured's** liability nor shall the **Company** be impleaded by such **Insured** or legal representatives of such **Insured**.

---

XVII.    **PARENT CORPORATION RIGHTS AND OBLIGATIONS**

By acceptance of this Policy, the **Parent Corporation** is considered the sole agent of and will act on behalf of each **Insured** with respect to:  the payment of premiums and the receiving of any return premiums that may become due under this Policy; the negotiation, agreement to and acceptance of endorsements; the giving or receiving of any notice, including Notice of Claim or Proof of Loss (except the giving of notice to apply for the Extended Reporting Period); the adjustment of the amount of **Loss** submitted; the giving of written notice of termination and the receipt or enforcement of payment of a **Loss**; and the **Parent Corporation** shall be responsible for application of any such payment, as provided for in this Policy, and each **Insured** agrees that the **Parent Corporation** shall act on their behalf.

---



**CHUBB**

*Power Source*<sup>sm</sup>
*General Terms and Conditions Section*

XVIII.    **ALTERATION AND ASSIGNMENT**

No change in, modification of, or assignment of interest under this Policy shall be effective except when made by written endorsement to this Policy which is signed by an authorized employee of Chubb & Son, a division of Federal Insurance Company.

XIX.    **TERMINATION OF POLICY**

(A)    This Policy shall terminate at the earliest of the following times:

(1)    upon receipt by the **Company** of written notice of termination from the **Parent Corporation**; provided that this Policy may not be terminated by the **Parent Corporation** after the effective date of any event described in Section XI Changes in Exposure (C) of these General Terms and Conditions;

(2)    upon expiration of the **Policy Period** as set forth in Item 2(B) of the Declarations;

(3)    twenty (20) days after receipt by the **Parent Corporation** of a written notice of termination from the **Company** based upon non-payment of premium, unless the premium is paid within such twenty (20) day period; or

(4)    at such other time as may be agreed upon by the **Company** and the **Parent Corporation**.

(B)    The **Company** shall refund the unearned premium computed at customary short rates if this Policy is terminated by the **Parent Corporation**. Under any other circumstances the refund shall be computed pro rata. Payment or tender of any unearned premium by the **Company** shall not be a condition precedent to the effectiveness of such termination, but such payment shall be made as soon as practicable.

XX.    **TERMINATION OF PRIOR BONDS OR POLICIES**

Any prior bonds or policies issued by the **Company** or its affiliates and specified in Item 15 of the Declarations shall terminate, if not already terminated, as of the inception of this Policy.

XXI.    **BANKRUPTCY**

Bankruptcy or insolvency of any **Insured** shall not relieve the **Company** of its obligations nor deprive the **Company** of its rights or defenses under this Policy.

XXII.    **HEADINGS**

The descriptions in the headings and sub-headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

# Schedule of Forms

To be attached to and form part of
Policy No.    8221-6440

Company:    Executive Risk Indemnity Inc.

Issued to:    Rhythm and Hues, Inc.

Power Source General Terms and Conditions

14-02-1350 (1/95 ed.)

14-02-14636 (9/08 ed.)

14-02-4091 (4/01 ed.)

D33522 (7/10 ed.)

Power Source D&O Liability Coverage Section

14-02-12110 (4/07 ed.)

14-02-13132 (11/08 ed.)

14-02-13244 (7/07 ed.)

14-02-14635 (9/10 ed.)

14-02-14911 (6/10 ed.)

D33565 (5/04 ed.)

Power Source EPL Coverage Section

14-02-12110 (4/07 ed.)

14-02-13016 (3/07 ed.)

14-02-14599 (9/08 ed.)

14-02-14617 (9/08 ed.)

14-02-14659 (10/08 ed.)

14-02-14726 (10/08 ed.)

14-02-16800 (3/10 ed.)

14-02-16805 (3/10 ed.)

14-02-6224 (10/01 ed.)

D33875 (12/04 ed.)

D33876 (12/04 ed.)

**ENDORSEMENT**

Coverage Section:  Power Source General Terms and Conditions

Effective date of
this endorsement: January 26, 2012                    Company: Executive Risk Indemnity Inc.

                                                      Endorsement No. 1

                                                      To be attached to and
                                                      form a part of Policy No. 8221-6440

Issued to: Rhythm and Hues, Inc.

---

**CALIFORNIA PREMIUM ENDORSEMENT**

In consideration of the premium charged, it is agreed that:

It is agreed that in compliance with the ruling of the Commissioner of Insurance of the State of California
and the opinion of the Attorney-General of that state requiring that the premium for all bonds or policies
be endorsed thereon, the basic premium charged for the attached bond/policy for the period

        From:   January 26, 2012

        To:     January 26, 2013

        Is:     Fifty-eight thousand eighteen and 00/100 Dollars ($58,018.00)

        CALIFORNIA SURCHARGE        N/A


ALL OTHER TERMS AND CONDITIONS REMAINED UNCHANGED.

_____
Authorized Representative

14-02-1350 (Ed. 01/1995)

**ENDORSEMENT/RIDER**

Coverage Section:  Power Source General Terms and Conditions

Effective date of
this endorsement/rider: January 26, 2012

Executive Risk Indemnity Inc.

Endorsement/Rider No. 2

To be attached to and
form a part of Policy No. 8221-6440

Issued to:  Rhythm and Hues, Inc.

AMEND REPORTING PROVISION ENDORSEMENT

In consideration of the premium charged, it is agreed that subparagraph (1) of paragraph A of Subsection VII., Reporting, of this Coverage Section is deleted and replaced with the following:

(1)   Any **Insured** shall, as a condition precedent to exercising their rights under any **Liability Coverage Section**, give to the **Company** written notice as soon as practicable of any **Claim**, but in no event later than the earliest of the following dates:

    (i)   ninety (90) days after the date on which any **Insured Organization's** chief executive officer. chief financial officer, in-house general counsel, risk manager, director of human resources, or any equivalent thereof, first becomes aware that the **Claim** has been made;

    (ii)   if this Coverage Section expires (or is otherwise terminated) without being renewed and if no Extended Reporting Period is purchased, ninety (90) days after the effective date of such expiration or termination; or

    (iii)   the expiration date of the Extended Reporting Period, if purchased;

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

14-02-14636 (09/2008)                              Page 1

**ENDORSEMENT**

Coverage Section:  Power Source General Terms and Conditions

Effective date of
this endorsement:  January 26, 2012                    Company:  Executive Risk Indemnity Inc.

Endorsement No. 3

To be attached to and
form a part of Policy No. 8221-6440

Issued to:  Rhythm and Hues, Inc.

_____

## CALIFORNIA AMENDATORY ENDORSEMENT
## TO GENERAL TERMS & CONDITIONS SECTION

In consideration of the premium charged, it is agreed that:

1.      The Company has no obligation to renew the Policy.  If the Company does not renew the Policy,
        it will mail or deliver notice of non-renewal to the Parent Corporation and to the agent at the
        mailing address shown on the Policy at least sixty (60), but not more than one hundred twenty
        (120), days before the Policy expiration date set forth in Item 2(B) of the Declarations.  Section
        XIX. Termination of Policy of the General Terms & Conditions Section, paragraph (A)(2), is
        amended to the extent necessary to effect the foregoing.

2.      The Company may condition renewal of the Policy upon a reduction in limits, elimination of
        coverages, increase in deductibles or increase by 25% or more of the rate upon which the
        premium is based, by mailing or delivering notice of such renewal change(s) to the Parent
        Corporation at the mailing address shown on the Policy and to the agent of record, if any, at least
        sixty (60), but not more than one hundred twenty (120), days before the Policy expiration date set
        forth in Item 2(B) of the Declarations.

3.      If, in connection with any non-renewal or renewal conditioned upon renewal change(s) as
        described in paragraphs 1 and 2 above, the Company does not mail or deliver notice thereof at
        least sixty (60) days before the Policy expiration date set forth in Item 2(B) of the Declarations,
        the coverage afforded under the Policy shall continue in force with no change in its terms,
        conditions and limitations for sixty (60) days after the Company mails or delivers such notice.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence over
any provisions of the Policy or any endorsement to the Policy, whenever added, that are inconsistent with or contrary
to the provisions of this Amendatory Endorsement, unless such Policy or endorsement provisions comply with the
applicable insurance laws of the state of California.

14-02-4091 (04/2001 ed.)            Page 1

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

ENDORSEMENT NO. 4
COMPLIANCE WITH APPLICABLE TRADE SANCTION LAWS

This Endorsement, effective at 12:01 a.m. on January 26, 2012, forms part of

| | |
|---|---|
| Policy No. | 8221-6440 |
| Issued to | Rhythm and Hues, Inc. |
| Issued by | Executive Risk Indemnity Inc. |

It is agreed that this insurance does not apply to the extent that trade or economic sanctions or other similar laws or regulations prohibit the coverage provided by this insurance.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

D33522 (Ed. 7/2010)                Page 1



CHUBB

# Power Source$^{sm}$
## Directors & Officers Liability Coverage Section

In consideration of payment of the premium and subject to the Declarations, General Terms and Conditions, and the limitations, conditions, provisions and other terms of this Coverage Section, the Company and the Insureds agree as follows:

---

**I.    INSURING CLAUSES**

(A)    **Individual Non-Indemnified Liability Coverage**

The **Company** shall pay **Loss** on behalf of the **Insured Persons** resulting from any **D&O Claim** first made against such **Insured Persons** during the **Policy Period**, or any applicable Extended Reporting Period, for **Wrongful Acts**, but only to the extent the **Insured Organization** does not indemnify the **Insured Persons** for such **Loss**.

(B)    **Individual Indemnified Liability Coverage**

The **Company** shall pay **Loss** on behalf of the **Insured Organization** resulting from any **D&O Claim** first made against **Insured Persons** during the **Policy Period**, or any applicable Extended Reporting Period, for **Wrongful Acts** to the extent the **Insured Organization** indemnifies the **Insured Persons** for such **Loss**.

(C)    **Corporate Liability Coverage (Optional)**

If the Corporate Liability Coverage is purchased as set forth in Item 5 of the Declarations, the **Company** shall pay **Loss** on behalf of the **Insured Organization** resulting from any **Insured Organization Claim** first made against such **Insured Organization** during the **Policy Period**, or any applicable Extended Reporting Period, for **Wrongful Acts**.

(D)    **Securityholder Derivative Demand Coverage**

The **Company** shall pay **Investigative Costs** on behalf of the **Insured Organization** resulting from any **Securityholder Derivative Demand** first made during the **Policy Period**, or any applicable Extended Reporting Period, for **Wrongful Acts**, in an amount not to exceed $100,000, which amount is part of and not in addition to the applicable Limit of Liability as set forth in Item 4 of the Declarations and no Deductible Amount shall apply to such amount.

---

**II.    DEFINITIONS**

For purposes of this Coverage Section:

(A)    **Claim** means for purposes of coverage under:

(1)    Insuring Clauses (A) and (B): any **D&O Claim**;

(2)    Insuring Clause (C): any **Insured Organization Claim**; and

(3)    Insuring Clause (D): any **Securityholder Derivative Demand**.



**Power Source**<sup>sm</sup>
*Directors & Officers Liability Coverage Section*

(B)     **Debtor in Possession** means a debtor in possession as such term is used in Chapter 11 of the
United States of America Bankruptcy Code.

(C)     **Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including
but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime
wages, salaries or fees of the directors, officers or employees of the **Insured Organization**)
incurred in defending any **Claim** and the premium for appeal, attachment or similar bonds.

(D)     **D&O Claim** means:

  (1)     any of the following:

    (a)     a written demand for monetary damages or non-monetary relief;

    (b)     a civil proceeding commenced by the service of a complaint or similar pleading;

    (c)     a criminal proceeding commenced by a return of an indictment; or

    (d)     a formal administrative or regulatory proceeding commenced by the filing of a
notice of charges, formal investigative order or similar document;

    against an **Insured Person** for a **Wrongful Act**, including any appeal therefrom; or

  (2)     a formal civil, criminal, administrative or regulatory investigation commenced by the
service upon or other receipt by the **Insured Person** of a written notice from the
investigating authority specifically identifying the **Insured Person** as a target individual
against whom formal charges may be commenced; or

  (3)     a written request received by an **Insured** to toll or waive a statute of limitations, relating
to a potential **D&O Claim** as described in paragraphs (1) and (2) above.

(E)     **Employee** means any natural person whose labor or service is engaged by and directed by the
**Insured Organization**, including part-time, seasonal, leased and temporary employees as well
as volunteers.  **Employee** shall not include any independent contractor.

(F)     **Executive** means any natural person specified below:

  (1)     duly elected or appointed directors, officers, members of the Board of Managers or
management committee members of any **Insured Organization** incorporated in the
United States of America;

  (2)     in–house general counsel of any **Insured Organization** incorporated in the United States
of America; or

  (3)     equivalent positions of (1) or (2) above in any **Insured Organization** chartered in any
other jurisdiction anywhere in the world.

(G)     **Financial Impairment** means the status of an **Insured Organization** resulting from:



**Power Source**<sup>sm</sup>
***Directors & Officers Liability Coverage Section***

    (1)    the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate such **Insured Organization**; or

    (2)    such **Insured Organization** becoming a **Debtor in Possession**.

(H)    **Insured** means the **Insured Organization** and any **Insured Person**.

(I)    **Insured Organization Claim** means:

    (1)    any of the following:

        (a)    a written demand for monetary damages or non-monetary relief;

        (b)    a civil proceeding commenced by the service of a complaint or a similar pleading; or

        (c)    a criminal proceeding commenced by a return of an indictment;

    against an **Insured Organization** for a **Wrongful Act**, including any appeal therefrom; or

    (2)    a written request received by an **Insured Organization** to toll or waive a statute of limitations, relating to a potential **Insured Organization Claim** as described in paragraph (1) above.

(J)    **Insured Person** means any past, present or future **Executive** or **Employee** of the **Insured Organization**.

(K)    **Investigative Costs** means reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the **Executives** or **Employees**) incurred by the **Insured Organization**, including its board of directors, Board of Managers, or any committee thereof, in connection with the **Insured Organization's** investigation or evaluation of any **Securityholder Derivative Demand**.

(L)    **Loss** means the total amount which any **Insured** becomes legally obligated to pay as a result of any **Claim** made against any **Insured** for **Wrongful Acts**, including, but not limited to, damages (including punitive or exemplary damages, to the extent such damages are insurable under the law of any jurisdiction which has a substantial relationship to the **Insureds**, the **Company**, this **Policy** or the **Claim** and which is most favorable to the insurability of such damages), judgments, settlements, pre-judgment and post-judgment interest and **Defense Costs**. **Loss** does not include:

    (1)    any amount for which an **Insured Organization** or an **Insured Person** is absolved from payment by reason of any covenant, agreement (other than indemnification of an **Insured Person** by the **Insured Organization**) or court order;

    (2)    matters uninsurable under the law pursuant to which this Policy is construed;

    (3)    taxes, fines or penalties imposed by law, or the multiple portion of any multiplied damage award;



CHUBB

*Power Source<sup>sm</sup>*
*Directors & Officers Liability Coverage Section*

(4)    any amount incurred by the **Insured Organization** (including its board of directors, Board of Managers, or any committee thereof) in connection with the investigation or evaluation of any **Claim** or potential **Claim** by or on behalf of the **Insured Organization**, except, solely with respect to the Securityholder Derivative Demand Coverage, **Investigative Costs**; or

(5)    any amount allocated to uncovered loss pursuant to Section X Allocation of the General Terms and Conditions.

(M)    **Outside Capacity** means service by an **Insured Person** as a director, officer, trustee, regent, governor or any equivalent executive position in an **Outside Entity**, but solely during the time that such service is with the knowledge and consent or at the request of the **Insured Organization**.

(N)    **Outside Capacity Wrongful Act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by an **Insured Person** in his or her **Outside Capacity**.

(O)    **Outside Entity** means:

(1)    any non-profit corporation, community chest, fund or foundation that is not included in the definition of **Insured Organization** and that is exempt from federal income tax as an organization described in Section 501(C)(3) of the Internal Revenue Code of 1986, as amended;

(2)    any other entity organized for a religious or charitable purpose under any non-profit organization act or statute; and

(3)    any other non-profit or any for-profit entity if such entity is specifically added as an **Outside Entity** by written endorsement attached to this Policy.

(P)    **Pollutants** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by, the United States Environmental Protection Agency or any state, county, municipality or locality counterpart thereof.  Such substances shall include, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials. **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products and any noise.

(Q)    **Pollution** means the actual, alleged or threatened discharge, release, escape or disposal of **Pollutants** into or on real or personal property, water or the atmosphere or any direction or request that the **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so.

(R)    **Securities Laws** means the Securities Act of 1933, Securities Exchange Act of 1934, Investment Act of 1940, any state "blue sky" securities law, or any other federal, state or local securities law or any amendments thereto or any rules or regulations promulgated thereunder or any other provision of statutory or common law used to impose liability in connection with the offer to sell or purchase, or the sale or purchase of securities.

(S)    **Securityholder Derivative Action** means any **Claim** brought on behalf of, or in the name or the right of, the **Insured Organization** by one or more securityholders of the **Insured Organization**



**CHUBB**

*Power Source*<sup>sm</sup>
*Directors & Officers Liability Coverage Section*

in their capacity as such if such **Claim** is brought and maintained without the assistance, participation or solicitation of any **Executive**.

(T)    **Securityholder Derivative Demand** means any written demand, by one or more securityholders of an **Insured Organization** without the assistance, participation or solicitation of any **Executive**, upon the board of directors or Board of Managers of such **Insured Organization**, to bring a civil proceeding in a court of law against any **Executive** for a **Wrongful Act** by an **Executive**.

(U)    **Wrongful Act** means:

    (1)    any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by:

        (a)    For purposes of coverage under Insuring Clauses (A) and (B): any **Insured Person** in his or her capacity as such, or any matter claimed against any **Insured Person** solely by reason of his or her status as such;

        (b)    For purposes of coverage under Insuring Clause (C): any **Insured Organization**; or

        (c)    For purposes of coverage under Insuring Clause (D): any **Executive**; or

    (2)    any **Outside Capacity Wrongful Act**.

## III.    EXCLUSIONS

(A)    No coverage will be available under this Coverage Section for any **Claim** against an **Insured**:

    (1)    based upon, arising from, or in consequence of any circumstance, if written notice of such circumstance has been given under any policy of which this Coverage Section is a direct or indirect renewal or replacement and if such prior policy affords coverage (or would afford such coverage except for the exhaustion of its limits of liability) for such **Claim**, in whole or in part, as a result of such notice;

    (2)    based upon, arising from, or in consequence of a written demand, suit, or other proceeding pending, or order, decree or judgment entered for or against any **Insured** on or prior to the applicable Pending or Prior Litigation Date as set forth in Item 10 of the Declarations, or the same or any substantially similar fact, circumstance or situation underlying or alleged therein;

    (3)    based upon, arising from, or in consequence of **Pollution**, including but not limited to any securities **Claim**, **Securityholder Derivative Demand** or **Securityholder Derivative Action** for financial loss to any **Insured Organization**, its securityholders or its creditors in connection with **Pollution**; provided that this Exclusion (A)(3) shall not apply to any **Securityholder Derivative Demand** or **Securityholder Derivative Action** under Insuring Clause (A) for which the **Insured Organization** does not indemnify the **Insured Person** either because the **Insured Organization** is not permitted by common or statutory law to grant such indemnification or because of the **Financial Impairment** of the **Insured Organization**;



CHUBB

*Power Source*<sup>sm</sup>

***Directors & Officers Liability Coverage Section***

(4)     for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed; provided that this Exclusion (A)(4) shall not apply to mental anguish, humiliation or emotional distress asserted in an employment-related **D&O Claim**;

(5)     brought or maintained by or on behalf of any **Insured** in any capacity; provided that this Exclusion (A)(5) shall not apply to:

   (a)     a **Securityholder Derivative Demand** or **Securityholder Derivative Action**;

   (b)     a **Claim** brought or maintained by an **Insured Person** for contribution or indemnification, if such **Claim** directly results from another **Claim** covered under this Coverage Section;

   (c)     a **D&O Claim** brought or maintained by **Employees** who are not past or present **Executives** of an **Insured Organization** if such **D&O Claim** is brought and maintained without the assistance, participation or solicitation of any such **Executives**;

   (d)     a **D&O Claim** brought or maintained by an **Executive** for the actual or alleged wrongful termination of such **Executive**;

   (e)     a **Claim** brought or maintained by an **Executive** who has not served as an **Executive** of the **Insured Organization** for at least four (4) years prior to the date such **Claim** is first made and who brings and maintains such **Claim** without the assistance, participation or solicitation of the **Insured Organization** or any **Insured Person** who: (i) is serving as an **Executive** of the **Insured Organization**; or (ii) has served as an **Executive** of the **Insured Organization** within such four (4) year period; or

   (f)     a **Claim** brought and maintained in a jurisdiction outside the United States of America, Canada or Australia by an **Insured Person** of an **Insured Organization** chartered in such foreign jurisdiction;

(6)     brought or maintained by or on behalf of any **Outside Entity**, or one or more directors or officers of any **Outside Entity**; provided that this Exclusion (A)(6) shall not apply to:

   (a)     a **Claim** that is a derivative action brought or maintained on behalf of an **Outside Entity** by one or more persons who are not: **Insured Persons**; or directors, officers, trustees, regents, governors or any equivalent executive position of the **Outside Entity**; and who bring and maintain such **Claim** without the solicitation, assistance or participation of any such person; or

   (b)     a **Claim** brought or maintained by: an **Insured Person**; or directors, officers, trustees, regents, governors or any equivalent executive position of an **Outside Entity**; for contribution or indemnification, if such **Claim** directly results from another **Claim** covered under this Coverage Section;

(7)     for **Wrongful Acts** of an **Insured Person** in his or her capacity as a director, officer, trustee, regent, governor or employee of an entity other than an **Insured Organization**,



**CHUBB**

*Power Source*<sup>sm</sup>

*Directors & Officers Liability Coverage Section*

even if such service is with the knowledge or consent or at the request of the **Insured Organization**, provided this exclusion shall not apply to service in an **Outside Capacity**;

(8) for an actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world;

(9) based upon, arising from, or in consequence of the actual or alleged violation of any **Securities Laws**; provided that this Exclusion (A)(9) shall not apply to any **Claim**:

    (a) based upon or arising out of the offering, sale or purchase of securities, whether debt or equity, in a transaction or a series of transactions that are in fact in law exempt from registration under the Securities Act of 1933 and any amendments thereto or any rules or regulations promulgated thereunder; or

    (b) made by any securityholder of the **Insured Organization** for the failure of the **Insured Organization** to undertake or complete the initial public offering or sale of securities of the **Insured Organization**;

(10) based upon, arising from, or in consequence of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Insured**, if a final and non-appealable judgment or adjudication adverse to such **Insured** establishes such a deliberately fraudulent act or omission or willful violation; or

(11) based upon, arising from, or in consequence of such **Insured** having gained in fact any profit, remuneration or financial advantage to which such **Insured** was not legally entitled.

(B) No coverage will be available under this Coverage Section for **Loss**, other than **Defense Costs**, which constitutes costs of compliance with any order for, grant of or agreement to provide non-monetary relief.

(C) No coverage will be available under Insuring Clause (C) for any **Insured Organization Claim**:

(1) based upon, arising from, or in consequence of the actual or proposed payment by the **Insured Organization** of allegedly inadequate consideration in connection with an **Insured Organization's** purchase of securities issued by any **Insured Organization**; provided that this Exclusion (C)(1) shall not apply to **Defense Costs**;

(2) based upon, arising from, or in consequence of any actual or alleged liability of an **Insured Organization** under any written or oral contract or agreement, provided that this Exclusion (C)(2) shall not apply to the extent that an **Insured Organization** would have been liable in the absence of the contract or agreement;

(3) based upon, arising from, or in consequence of any employment-related **Wrongful Act**;

(4) based upon, arising from, or in consequence of any actual or alleged discrimination or sexual harassment of any third party;

(5) based upon, arising from, or in consequence of libel, slander, oral or written publication of defamatory or disparaging material, invasion of privacy, wrongful entry, eviction, false



**CHUBB**

*Power Source*<sup>sm</sup>
*Directors & Officers Liability Coverage Section*

arrest, false imprisonment, malicious prosecution, malicious use or abuse of process, assault, battery or loss of consortium;

(6)    based upon, arising from, or in consequence of any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted or allegedly committed or attempted in connection with the rendering of, or actual or alleged failure to render, any professional services for others by any person or entity otherwise entitled to coverage under this Coverage Section; provided that this Exclusion (C)(6) shall not apply to any securities **Claim**, **Securityholder Derivative Demand** or **Securityholder Derivative Action**;

(7)    based upon, arising from, or in consequence of any actual or alleged infringement of copyright, patent, trademark, trade name, trade dress, service mark or misappropriation of ideas or trade secrets; or

(8)    based upon, arising from, or in consequence of allegations of price fixing, restraint of trade, monopolization, unfair trade practices or any actual or alleged violation of the Federal Trade Commission Act, the Sherman Anti-Trust Act, the Clayton Act, or any other federal statutory provision involving anti-trust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities, and any amendments thereto or any rules or regulations promulgated thereunder or in connection with such statutes; or any similar provision of any federal, state, or local statutory law or common law anywhere in the world.

(D)    **Severability of Exclusions**

With respect to the Exclusions (A)(10) and (A)(11) in this Coverage Section:

(1)    no fact pertaining to or knowledge possessed by any **Insured Person** shall be imputed to any other **Insured Person** to determine if coverage is available; and

(2)    only facts pertaining to and knowledge possessed by any past, present or future Chief Financial Officer, President, Chief Executive Officer or Chairperson of any **Insured Organization** shall be imputed to any **Insured Organization** to determine if coverage is available.

---

**IV.    ADDITIONAL LIMIT OF LIABILITY DEDICATED FOR EXECUTIVES (Optional)**

(A)    Notwithstanding anything in this Policy to the contrary, the Additional Limit of Liability Dedicated For Executives, if purchased as set forth in Item 5 of the Declarations, will be an additional Limit of Liability in an amount not to exceed $500,000, which amount is in addition to and not part of the Limit of Liability as set forth in Item 4 of the Declarations.

(B)    This Additional Limit of Liability Dedicated For Executives is available solely for **Loss** resulting from any **D&O Claim** against any **Executive** covered under Insuring Clause (A) of this Coverage Section.

(C)    The Additional Limit of Liability Dedicated For Executives shall be excess of any insurance available that is specifically excess to this Policy and such excess insurance must be completely



**CHUBB**

### Power Source<sup>sm</sup>
*Directors & Officers Liability Coverage Section*

exhausted by payment of loss, damages or defense costs thereunder before the **Company** shall
have any obligation to make any payment on account of the Additional Limit of Liability Dedicated
For Executives.

## V.    PAYMENT OF LOSS

(A)    In the event of **Loss** arising from one or more **Claims** for which payment is otherwise due under
this Coverage Section but which **Loss** in the aggregate exceeds the remaining available Limit of
Liability for this Coverage Section, the **Company** shall:

   (1)    first pay such **Loss** for which coverage is provided under Insuring Clause (A) of this
   Coverage Section; then

   (2)    with respect to whatever remaining amount of the Limit of Liability is available after
   payment of (1) above, pay such **Loss** for which coverage is provided under any other
   Insuring Clause of this Coverage Section.

(B)    Subject to the provisions of paragraph (A)(2) above, the **Company** shall, at the written request of
the **Parent Corporation**, delay payment of **Loss** for which coverage is provided under any
Insuring Clause other than Insuring Clause (A) until such time as the **Parent Corporation**
designates; provided that the **Company's** liability with respect to such delayed payment shall not
be increased, and shall not include any interest as a result of such delay.  The **Parent
Corporation** shall provide written notice to the **Company** when such delayed payment shall be
made.  Such written notice shall be deemed consent from all **Insureds**, including all **Insured
Persons**, to release such payment and the **Company** shall have no further obligation under this
Policy with respect to such funds.

## VI.    SECURITIES TRANSACTIONS

If, during the **Policy Period**, the **Insured Organization** intends to sell or offer to sell securities of
any kind or nature whatsoever, issued at any time by the **Insured Organization** in a transaction
that is not exempt from registration under the Securities Act of 1933, as amended (a "Transaction"),
the **Insured Organization** will, no later than thirty (30) days prior to the effective date of the
registration statement for such sale or offering, give the **Company** written notice of the proposed
sale or offering and all information requested by the **Company** relating thereto.  The **Company**
shall provide to the **Insured Organization** a quotation for coverage with respect to such sale or
offering; provided any such coverage shall be subject to such terms, conditions, limitations of
coverage and such additional premium as the **Company**, in its sole discretion, may require.  Unless
and until the **Company** determines to issue coverage there shall in fact be no coverage for such
Transaction.

## VII.    OTHER INSURANCE

(A)    If any **Loss** under this Coverage Section is insured under any other valid and collectible
insurance policy(ies), prior or current, then this Coverage Section shall cover such **Loss**, subject
to its limitations, conditions, provisions and other terms, only to the extent that the amount of such



**CHUBB**

*Power Source*<sup>sm</sup>

*Directors & Officers Liability Coverage Section*

**Loss** is in excess of the amount of such other insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limit of Liability provided in this Coverage Section.

(B)     Any coverage for **Claims** for **Outside Capacity Wrongful Acts** will be specifically excess of any insurance provided by or indemnification available from the **Outside Entity** or any other source, other than the **Insured Organization**, for the benefit of the **Insured Person** serving in such **Outside Capacity**. Payment by the **Company** or any affiliate of the **Company** under another policy as a result of a **Claim** against an **Insured Person** in an **Outside Capacity** shall reduce, by the amount of such payment, the **Company's** Limit of Liability under this Coverage Section with respect to such **Claim**.

---

**VIII.     COORDINATION OF COVERAGE**

Any **Loss** covered under both this Coverage Section and the Employment Practices Liability Coverage Section, if purchased, shall be first covered under the Employment Practices Liability Coverage Section, subject to the terms, conditions and limitations therein. Any remaining portion of such **Loss** otherwise covered under this Coverage Section which is not paid under the Employment Practices Liability Coverage Section shall be covered under this Coverage Section, subject to its terms, conditions and limitations.

**ENDORSEMENT/RIDER**

Coverage Section:  Power Source D&O Liability Coverage Section

Effective date of
this endorsement/rider: January 26, 2012          Executive Risk Indemnity Inc.

Endorsement/Rider No. 1

To be attached to and
form a part of Policy No. 8221-6440

Issued to:  Rhythm and Hues, Inc.

---

AMEND DEFINITION OF EXECUTIVE ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Executive**, as defined in Subsection II., Definitions of this coverage section is deleted in its entirety and replaced with the following:

>   **Executive** means any natural person specified below:

>   (1)   past, present or future duly elected or appointed directors, officers, members of the Board of Managers or management committees of any **Insured Organization** incorporated in the United States of America;

>   (2)   past, present or future in-house general counsel of any **Insured Organization** incorporated in the United States of America; or

>   (3)   equivalent positions of (1) or (2) above in any **Insured Organizations** chartered in any other jurisdiction anywhere in the world.

title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  Power Source D&O Liability Coverage Section

Effective date of
this endorsement/rider: January 26, 2012          Executive Risk Indemnity Inc.

Endorsement/Rider No. 2

To be attached to and
form a part of Policy No. 8221-6440

Issued to:  Rhythm and Hues, Inc.

PROFESSIONAL SERVICES EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is agreed that:

1.  No coverage will be available under this Coverage Section for any **Claim** against an **Insured** based upon,
    arising from, or in consequence of any **Wrongful Act** in connection with the rendering of, or actual or
    alleged failure to render, any professional services (including any professional services listed below);
    provided, however, that this Exclusion shall not apply to any **Specific Management Claim** (as defined in
    paragraph (2) of this endorsement).

SPECIFIED PROFESSIONAL SERVICES (if applicable)

Computer Animation and Visual Effects

2.  Solely for the purposes of this endorsement, the term "**Specific Management Claim**" means any **Claim**
    made against an **Executive** for a **Wrongful Act** by such **Executive** in connection with the **Executive's**
    management of any **Insured Organization** or any **Subsidiary**, division or group of an **Insured
    Organization**.  However, **Specific Management Claim** shall not mean, and in no event shall any
    coverage be afforded herein for, any **Claim** made against an **Executive** for a **Wrongful Act** by such
    **Executive** in the direct offering of, or in supervising or assisting an **Insured Person** in direct offering of,
    any professional services as set forth in paragraph (1) of this endorsement.

3.  Any coverage provided pursuant to this endorsement for such **Specific Management Claim**, shall always
    be excess of any coverage provided under any errors and omissions or general liability policies, or any
    other policy providing coverage any actual or alleged error, misstatement, misleading statement, act,
    omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted in
    connection with the rendering of, or actual or alleged failure to render, any professional services,
    regardless of whether any such policies are stated to be primary excess contributory, contingent or
    otherwise.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  Power Source D&O Liability Coverage Section

Effective date of
this endorsement/rider: January 26, 2012          Executive Risk Indemnity Inc.

                                                  Endorsement/Rider No. 3

                                                  To be attached to and
                                                  form a part of Policy No. 8221-6440

Issued to:  Rhythm and Hues, Inc.

AMEND REPRESENTATIONS AND SEVERABILITY WITH ABSOLUTE NON-RESCINDABLE COVERAGE
ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     Solely with respect to this Coverage Section, Subsection XII(B) of the General Terms and Conditions is
        deemed deleted and replaced with the following:

        (B)     Any written application(s) for coverage shall be construed as a separate application(s) for
                coverage by each **Insured Person**.  With respect to the declarations and statements in such
                applications(s), no knowledge possessed by an **Insured Person** shall be imputed to any other
                **Insured Person**.

                However, in the event that such written application(s) contains any misrepresentations made with
                the actual intent to deceive or contains misrepresentations which materially affect either the
                acceptance of the risk or the hazard assumed by the Company under this Coverage Section, then
                no coverage shall be afforded for any **Claim** based upon, arising from or in consequence of any
                such misrepresentations under:

                (i)     Insuring Clause A of this Coverage Section, with respect to any **Insured Person** who
                        knew of such misrepresentations (whether or not such individual knew such
                        application(s) contained such misrepresentations);

                (ii)    Insuring Clause B of this Coverage Section, with respect to any **Insured Organization** to
                        the extent it indemnifies any **Insured Person** in subsection (i) above; and

                (iii)   Insuring Clause C or D of this Coverage Section, with respect to any **Insured
                        Organization** if any past or present chief executive officer, chief financial officer or any
                        equivalent thereof of any **Insured Organization** knew of such misrepresentations
                        (whether or not such individual knew such application(s) contained such
                        misrepresentations);

(2)    Solely with respect to any **Claim** under this Coverage Section which may be subject to this endorsement, Subsection X of the General Terms and Conditions is deemed deleted and replaced with the following:

If, in any **Claim** under this Coverage Section, the **Insureds** who are afforded coverage for such **Claim** incur an amount consisting of both **Loss** that is covered by this Coverage Section and loss that is not covered by this Coverage Section because such **Claim** includes both covered and uncovered matters or covered and uncovered parties, then all loss incurred by such **Insured** from such **Claim** will be allocated between covered **Loss** and uncovered loss based upon the relative legal exposures of the parties to such matters.

(3)    The following Subsection is added to this Coverage Section as follows:

***Non-Rescindable***

The **Company** shall not be entitled under any circumstances to rescind this Coverage Section with respect to any **Insured**.

Nothing contained herein shall limit or waive any other rights or remedies available to the **Company**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  Power Source D&O Liability Coverage Section

Effective date of
this endorsement/rider: January 26, 2012            Executive Risk Indemnity Inc.

                                                    Endorsement/Rider No. 4

                                                    To be attached to and
                                                    form a part of Policy No. 8221-6440

Issued to:  Rhythm and Hues, Inc.

---

AMEND DEDICATED LIMIT FOR EXECUTIVES ENDORSEMENT

In consideration of the premium charged, it is agreed that paragraph (A) of Subsection IV., Additional Limit of Liability Dedicated For Executives (Optional), of this Coverage Section is deleted and replaced with the following:

(A)    Notwithstanding anything in this Policy to the contrary, the Additional Limit of Liability Dedicated For Executives, if purchased, will be an additional Limit of Liability in an amount not to exceed $1,000,000, which amount is in addition to and not part of the Limit of Liability for this coverage section.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  Power Source D&O Liability Coverage Section

Effective date of
this endorsement/rider: January 26, 2012          Executive Risk Indemnity Inc.

Endorsement/Rider No. 5

To be attached to and
form a part of Policy No. 8221-6440

Issued to:  Rhythm and Hues, Inc.

POWERSOURCE ADVANTAGE FOR D&O LIABILITY ENDORSEMENT

In consideration of the premium charged, it is agreed that solely with respect to the Director's and Officers' Liability Coverage Section the following coverage enhancements are being made:

| AMEND DEFINITIONS OF D&O CLAIM AND INSURED ORGANIZATION CLAIM |
| --- |

1.    Definition (D), **D&O Claim**, and definition (I), **Insured Organization Claim**, in Subsection II., Definitions, of this Coverage Section are deleted and replaced with the following:

    (D)    **D&O Claim** means:

        (1)    any of the following:

            (a)    a written demand for monetary damages or non-monetary relief;

            (b)    a civil proceeding commenced by the service of a complaint or similar pleading;

            (c)    a criminal proceeding commenced by a return of an indictment;

            (d)    a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document; or

            (e)    an arbitration or mediation proceeding commenced by receipt of a demand for arbitration, demand for mediation or similar document,

        against an **Insured Person** for a **Wrongful Act**, including any appeal therefrom; or

        (2)    a civil, criminal, administrative or regulatory investigation commenced by the service upon or other receipt by the **Insured Person** of a written notice from the investigating authority specifically identifying the **Insured Person** as a target individual against whom formal charges may be commenced;

        (3)    a written request received by an **Insured** to toll or waive a statute of limitations, relating to a potential **D&O Claim** as described in paragraphs (1) and (2) above; or

(4)    when used in reference to the coverage provided by Insuring Clause (A), **D&O Claim** shall also mean a subpoena received by an **Insured Person** in connection with (1)(b), (1)(c) or (2) above or with any equivalent action against an **Organization**; in which case, the Company shall pay the **Defense Costs** incurred by such **Insured Person** in responding to such subpoena.

(I)    **Insured Organization Claim** means:

    (1)    any of the following:

        (a)    a written demand for monetary damages or non-monetary relief;

        (b)    a civil proceeding commenced by the service of a complaint or a similar pleading;

        (c)    a criminal proceeding commenced by a return of an indictment; or

        (d)    an arbitration or mediation proceeding commenced by receipt of a demand for arbitration, demand for mediation or similar document,

    against an **Insured Organization** for a **Wrongful Act**, including any appeal therefrom; or

    (2)    a written request received by an **Insured Organization** to toll or waive a statute of limitations, relating to a potential **Insured Organization Claim** as described in paragraph (1) above.

---

### AMEND DEFINITION OF LOSS TO INCLUDE MULTIPLED DAMAGES

2.    Definition (L), **Loss**, in Subsection II., Definitions, of this Coverage Section is amended as follows:

    (a)    The first sentence of the definition is deleted and replaced with the following:

        **Loss** means the total amount which any **Insured** becomes legally obligated to pay as a result of any **Claim** made against any **Insured** for **Wrongful Acts**, including, but not limited to, damages (including punitive, exemplary or multiplied damages, to the extent such damages are insurable under the law of any jurisdiction which has a substantial relationship to the **Insureds**, the **Company**, this Policy or the **Claim** and which is most favorable to the insurability of such damages), judgments, settlements, pre-judgment and post-judgment interest and **Defense Costs**.

    (b)    Item (3) of the definition is deleted and replaced with the following:

        (3)    taxes, fines or penalties imposed by law;

---

### AMEND POLLUTION EXCLUSION

3.    Exclusion (A)(3) in Subsection III., Exclusions, of this Coverage Section is deleted and replaced with the following:

    (3)    based upon, arising from, or in consequence of **Pollution**, including but not limited to any securities **Claim**, **Securityholder Derivative Demand** or **Securityholder Derivative Action** for financial loss to any **Insured Organization**, its securityholders or its creditors in connection with **Pollution**.

This Exclusion (A)(3) shall not apply to **Loss**, not including **Loss** constituting **Clean Up Costs**, on account of a **D&O Claim** for which an **Insured Organization** does not indemnify the **Insured Person** either because the **Insured Organization** is not permitted by common or statutory law to grant such indemnification or because of the **Financial Impairment** of the **Insured Organization**; provided that this exception to Exclusion (A)(3) shall not apply to any **Claim** first made in fact after the **Policy Period** but considered pursuant to paragraph (A)(2) of Subsection VII., Reporting, of the General Terms and Conditions Section of this Policy to have been made during the **Policy Period** because it arises from circumstances noticed to the **Company** during the **Policy Period**.

4.   The following definition is added to Subsection II., Definitions, of this Coverage Section:

**Clean up Costs** means any expenses, incurred in testing for, monitoring, cleaning up neutralizing, containing, treating, removing, detoxifying or assessing the effects of **Pollutants**.

---

**AMEND INSURED VERSUS INSURED EXCLUSION**

---

5.   Exclusion (A)(5) of Subsection III., Exclusions, of this Coverage Section is deleted and replaced with the following:

(5)   brought or maintained by or on behalf of any **Insured** in any capacity; provided that this Exclusion (A)(5) shall not apply to:

(a)   a **Securityholder Derivative Demand** or **Securityholder Derivative Action**;

(b)   a **Claim** brought or maintained by an **Insured Person** for contribution or indemnification, if such **Claim** directly results from another **Claim** covered under this Coverage Section;

(c)   a **D&O Claim** brought or maintained by **Employees** who are not past or present **Executives** of an **Insured Organization** if such **D&O Claim** is brought and maintained without the assistance, participation or solicitation of any such **Executives**;

(d)   a **D&O Claim** brought or maintained by an **Executive** for the actual or alleged wrongful termination of such **Executive**;

(e)   a **Claim** brought or maintained by an **Executive** who has not served as an **Executive** of the **Insured Organization** for at least three (3) years prior to the date such **Claim** is first made and who brings and maintains such **Claim** without the assistance, participation or solicitation of the **Insured Organization** or any **Insured Person** who: (i) is serving as an **Executive** of the **Insured Organization**; or (ii) has served as an **Executive** of the **Insured Organization** within such three (3) year period;

(f)   a **Claim** brought and maintained in a jurisdiction outside the United States of America, Canada or Australia by an **Insured Person** of an **Insured Organization** chartered in such foreign jurisdiction; or

(g)   a **Claim** brought against **Insured Persons** of any **Insured Organization** by a bankruptcy trustee, receiver, liquidator, conservator, rehabilitator, creditors' committee or any similar official who has been appointed to take control of, supervise, manage or liquidate the **Parent Corporation**;

This Exclusion (A)(5) shall also not apply to any assistance, participation or solicitation of any **Executive** for which 18 U.S.C. 1514A ("whistleblower" protection provided under the

Sarbanes-Oxley Act of 2002), or any similar "whistleblower" protection provision of an applicable federal, state, local or foreign law affords protection to such **Executive**.

---

**ROAD SHOW AND PUBLIC COMPANY QUOTE**

6.   Exclusion (A)(9) of Subsection III., Exclusions, of this Coverage Section is deleted and replaced with the following:

(9)   based upon, arising from, or in consequence of (i) any public offering of securities issued by any **Insured Organization** or **Outside Entity**, or (ii) the purchase or sale of any such securities in or subsequent to any such public offering; provided that this Exclusion (A)(9) shall not apply to any **Claim**:

(a)   based upon or arising out of an offering, sale or purchase of securities that are not required to be registered under the Securities Act of 1933;

(b)   made by any securityholder of the **Insured Organization** for the failure of the **Insured Organization** to undertake or complete the initial public offering or sale of securities of the **Insured Organization**; or

(c)   for any **Wrongful Act** relating to the **Insured Organization's** preparation for any public offering, including any presentations (including the "road show" presentation) made by the **Insured Organization** and its **Executives** via any medium in connection with such public offering, if such offering does not occur.

7.   Section VI., Securities Transactions, of this Coverage Section is deleted and replaced with the following:

If, during the **Policy Period**, the **Insured Organization** intends to sell or offers to sell securities that are required to be registered under the Securities Act of 1933, the **Insured Organization** will, no later than thirty (30) days prior to the effective date of the Registration Statement for such sale or offering, give the **Company** written notice of the proposed sale or offering and all information requested by the **Company** relating thereto. The **Company** shall provide to the **Insured Organization** a quotation for coverage with respect to such sale or offering (including for **Wrongful Acts** occurring in the course of the "road show" presentation to potential investors); provided any such coverage offered shall be subject to such other terms, conditions, and limitations of coverage and such additional premium as the **Company**, in its sole discretion, may require.

8.   In addition to, and not in limitation of, the provisions of Exclusion (A)(9) of this Coverage Section (as amended by paragraph 6. above) and the provisions of Subsection XI., Changes in Exposure (A), of the General Terms and Conditions Section of this Policy, it is understood and agreed that no coverage shall be available under this Coverage Section for **Loss** resulting from any **Claim** based upon, arising from, or in consequence of an **Insured Organization** acquiring, or merging with or into, any entity that is (or has ever been) the issuer of a class of publicly held securities (a "Transaction") if, as a result of such Transaction (a) such entity becomes a **Subsidiary** or (b) the **Insured Organization** succeeds to any liabilities of such entity (either contractually or by operation of law). However, if within thirty (30) days prior to the Transaction, the **Parent Corporation** gives the **Company** written notice of the Transaction, together with any other information requested by the **Company** relating thereto, the **Company** agrees to provide to the **Insured Organization** a quotation for coverage with respect to such Transaction; provided any such coverage offered shall be subject to such other terms, conditions, and limitations and such additional premium as the **Company**, in its sole discretion, may require.

## AMENDED CONDUCT EXCLUSIONS

9.    Solely with respect to Subsection I. Insuring Clauses (A) Individual Non-Indemnified Liability Coverage of this Coverage Section, Subsection III. Exclusions (A)(10) and (A)(11) are deleted and replaced with the following:

(10)    based upon, arising from, or in consequence of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Insured Person**, if a final judgment or final adjudication in any underlying proceeding or action establishes such a deliberately fraudulent act or omission or willful violation; or

(11)    based upon, arising from, or in consequence of such **Insured Person** having gained any profit, remuneration or other advantage to which such **Insured Person** was not legally entitled, if a final judgment or final adjudication in any underlying proceeding or action establishes the gaining of such a profit, remuneration or advantage.

10.    Solely with respect to Subsection I. Insuring Clauses (B) Individual Indemnified Liability Coverage of this Coverage Section, Subsection III. Exclusions (A)(10) and (A)(11) are deleted.

11.    Solely with respect to Subsection I. Insuring Clauses (C) Corporate Liability Coverage of this Coverage Section, Subsection III. Exclusions (A)(10) and (A)(11) are deleted and replaced with the following:

(10)    based upon, arising from or in consequence of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Insured Organization** or by any past, present or future chief financial officer, chief executive officer, chief operating officer, or any equivalent thereof of such **Insured Organization**, if a final judgment or final adjudication in any underlying proceeding or action establishes such a deliberately fraudulent act or omission or willful violation; or

(11)    based upon, arising from, or in consequence of such **Insured Organization**, or any past, present or future chief financial officer, chief executive officer, chief operating officer, or any equivalent thereof of such **Insured Organization** having gained any profit, remuneration or other advantage to which any such individual or such **Insured Organization** was not legally entitled, if a final judgment or final adjudication in any underlying proceeding or action establishes the gaining of such a profit, remuneration or advantage.

12.    With respect to Exclusions (A)(10) and (A)(11) of this Coverage Section, the terms "proceeding" or "action", as used therein, shall not include any declaratory proceeding brought by or against the Company.

13.    Subsection III. Exclusions (D), Severability of Exclusions, of this Coverage Section is amended by deleting subparagraph (2) and replacing it with the following:

(2)    only facts pertaining to and knowledge possessed by any past, present, or future chief financial officer, chief executive officer, chief operating officer, or any equivalent thereof of an **Insured Organization** shall be imputed to such **Insured Organization** and its **Subsidiaries** for the purpose of applying Exclusions (A)(10) and (A)(11) of this Coverage Section.

## DOMESTIC PARTNER COVERAGE

14.    Subsection II., General Definitions, of the General Terms and Conditions Section is deemed amended as follows:

(a)    The following definition is added to Subsection II:

**Domestic Partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Insured Organization**.

(b)    The definition of **Insured Person**, is deleted and replaced with the following:

(I)    **Insured Person** shall have the meaning ascribed to that term in each Coverage Section. Solely with respect to any **Liability Coverage Section**, coverage for an **Insured Person** shall also include coverage for:

(1)    the lawful spouse or **Domestic Partner** of such **Insured Person**, if named as a co-defendant with such **Insured Person** solely by reason of such spouse or **Domestic Partner's** status as a spouse or **Domestic Partner**, or such spouse or **Domestic Partner's** ownership interest in property, which is sought by the claimant as recovery for an alleged **Wrongful Act** of such **Insured Person**; and

(2)    in the event of the death, incapacity or bankruptcy of an **Insured Person**, the estate, heirs, legal representatives or assigns of such **Insured Person**;

but any such coverage shall apply only with respect to a **Wrongful Act** of such **Insured Person**.    All terms and conditions of this Policy, including without limitation, the Deductible Amount applicable to **Loss** incurred by the **Insured Person**, shall also apply to loss incurred by such spouses, **Domestic Partners**, estates, heirs, legal representatives and assigns of such **Insured Person**.

## AMEND SETTLEMENT PROVISION

15.    Subparagraph (2) of Paragraph (A) of Subsection IX., Defense and Settlement, of the General Terms and Conditions Section is deemed deleted and replaced with the following:

(2)    The **Company** may make any investigation it deems necessary and may, with the consent of the **Insured**, make any settlement of any **Claim** it deems expedient.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

**ENDORSEMENT**

Coverage Section:  Power Source D&O Liability Coverage Section

Effective date of
this endorsement: January 26, 2012                Company:  Executive Risk Indemnity Inc.

                                                  Endorsement No. 6

                                                  To be attached to and
                                                  form a part of Policy No. 8221-6440

Issued to:  Rhythm and Hues, Inc.

---

DELETE SECTION III EXCLUSION (C)(8) ENDORSEMENT

In consideration of the premium charged, it is agreed that Section III Exclusion (C)(8) of the Coverage Section identified above is deleted in its entirety.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative



**CHUBB**

*Power Source*<sup>sm</sup>
*Employment Practices Liability Coverage Section*

In consideration of payment of the premium and subject to the Declarations, General Terms and Conditions, and the limitations, conditions, provisions and other terms of this Coverage Section, the Company and the Insureds agree as follows:

---

I.    **INSURING CLAUSES**

(A)    **Employment Practices Liability Coverage**

The **Company** shall pay **Loss** on behalf of the **Insureds** resulting from any **Employment Claim** first made against such **Insureds** during the **Policy Period**, or any applicable the Extended Reporting Period, for **Wrongful Acts**.

(B)    **Third Party Liability Coverage (Optional)**

If Third Party Liability Coverage is purchased as set forth in Item 5 of the Declarations, the **Company** shall pay **Loss** on behalf of the **Insureds** resulting from any **Third Party Claim** first made against such **Insureds** during the **Policy Period**, or any applicable Extended Reporting Period, for **Wrongful Acts** in the amount set forth in Item 5 of the Declarations. Such amount shall be part of and not in addition to the Limit of Liability as set forth in Item 4 of the Declarations.

---

II.    **DEFINITIONS**

For purposes of this Coverage Section:

(A)    **Benefits** means perquisites, fringe benefits, deferred compensation or payments (including insurance premiums) in connection with an employee benefit plan and any other payment. **Benefits** shall not include salary or wages, **Stock Benefits** or non-deferred cash incentive compensation.

(B)    **Breach of Employment Contract** means any breach of any oral, written or implied contract or contractual obligation including but not limited to any such obligation arising out of any personnel manual, employee handbook, policy statement or other representation.

(C)    **Claim** means any **Employment Claim** and any **Third Party Claim**.

(D)    **Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, officers or employees of the **Insured Organization**) incurred in defending any **Claim** and the premium for appeal, attachment or similar bonds.

(E)    **Discrimination** means any violation of employment discrimination laws including any actual, alleged or constructive employment termination, dismissal, or discharge, employment demotion, denial of tenure, modification of any term or condition of employment, any failure or refusal to hire or promote, or any limitation, segregation or classification of any **Employee** or applicant for employment in any way that would deprive or tend to deprive any person of employment opportunities or otherwise affect his or her status as an **Employee** based on such person's race, color, religion, creed, age, sex, disability, marital status, national origin, pregnancy, HIV status, sexual orientation or preference, Vietnam Era Veteran status or other protected military status or other status that is protected pursuant to any federal, state, or local statutory law or common law anywhere in the world.

**CHUBB**

**Power Source**<sup>sm</sup>
*Employment Practices Liability Coverage Section*

(F)     **Employee** means any natural person whose labor or service is engaged by and directed by the **Insured Organization**, including part-time, seasonal, leased and temporary employees as well as volunteers, but only while that natural person is acting in his or her capacity as such. **Employee** shall not include any **Independent Contractor**.

(G)     **Employment Claim** means:

(1)     any of the following:

(a)     a written demand for monetary damages or non-monetary relief, including but not limited to a written demand for reinstatement, reemployment or re-engagement;

(b)     a civil proceeding commenced by the service of a complaint or similar pleading;

(c)     an arbitration proceeding; or

(d)     a formal administrative or regulatory proceeding or tribunal proceeding, commenced by the filing of a notice of charges, formal investigative order or similar document, including, but not limited to, any Equal Employment Opportunity Commission proceeding or any other similar governmental agency located anywhere in the world; provided however that in the context of an audit conducted by the Office of Federal Contract Compliance Programs ("OFCCP"), **Employment Claim** shall be limited to a Notice of Violation or Order to Show Cause or written demand for monetary damages or injunctive relief;

which is brought and maintained by or on behalf of any past, present or prospective **Employee**, **Executive** or **Independent Contractor** or by the OFCCP, with respect to paragraph (d) above, against any **Insured** for a **Wrongful Act** in connection with any actual or alleged **Breach of Employment Contract**, **Discrimination**, **Harassment**, **Retaliation**, **Workplace Tort** or **Wrongful Employment Decision** (even if such **Wrongful Act** is related to allegations in a criminal proceeding), including any appeal therefrom; or

(2)     a written request received by an **Insured** to toll or waive a statute of limitations, relating to a potential **Employment Claim** as described in paragraph (1) above.

**Employment Claim** shall not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement.

(H)     **Executive** means any natural person specified below:

(1)     duly elected or appointed as a directors, officers, members of the Board of Managers or management committee members of any **Insured Organization** incorporated in the United States of America;

(2)     in–house general counsel of any **Insured Organization** incorporated in the United States of America; or

(3)     equivalent positions of (1) or (2) above in any **Insured Organization** chartered in any other jurisdiction anywhere in the world.

**CHUBB**

*Power Source*<sup>sm</sup>

*Employment Practices Liability Coverage Section*

(I)  **Harassment** means:

    (1)  sexual harassment, including unwelcome sexual advances, requests for sexual favors, or other conduct of a sexual nature that is made a condition of employment with, used as a basis for employment decisions by, interferes with performance or creates an intimidating, hostile or offensive working environment within, the **Insured Organization**; or

    (2)  workplace harassment, including work related harassment of a non-sexual nature that interferes with performance or creates an intimidating, hostile or offensive working environment within the **Insured Organization**.

(J)  **Independent Contractor** means any natural person working for the **Insured Organization** in the capacity of an independent contractor and pursuant to an **Independent Contractor Services Agreement**.

(K)  **Independent Contractor Services Agreement** means any express contract or agreement between an **Independent Contractor** and the **Insured Organization** governing the nature of the **Insureds'** engagement of such **Independent Contractor**.

(L)  **Insured** means the **Insured Organization** and any **Insured Person**.

(M)  **Insured Person** means:

    (1)  any past, present or future **Executive** or **Employee** of the **Insured Organization**; and

    (2)  with respect to Insuring Clause (A), any **Independent Contractor**, but only if the **Insured Organization** agrees in writing, prior to or no later than thirty (30) days after the **Employment Claim** or **Third Party Liability Claim** is made, to indemnify the **Independent Contractor** for liability arising out of any **Employment Claim** or **Third Party Liability Claim.**

(N)  **Loss** means the total amount which any **Insured** becomes legally obligated to pay as a result of any **Claim** made against any **Insured** for **Wrongful Acts**, including, but not limited to, damages (including punitive or exemplary damages, liquidated damages awarded pursuant to the Age Discrimination in Employment Act or the Equal Pay Act, or the multiple portion of any multiplied damage award, to the extent such damages are insurable under the law of any jurisdiction which has a substantial relationship to the **Insureds**, the **Company**, this Policy or the **Claim** and which is most favorable to the insurability of such damages), judgments, settlements, pre-judgment and post-judgment interest and **Defense Costs**.  **Loss** does not include:

    (1)  any amount for which an **Insured Organization** or an **Insured Person** is absolved from payment by reason of any covenant, agreement (other than indemnification of an **Insured Person** by the **Insured Organization**) or court order;

    (2)  matters uninsurable under the law pursuant to which this Policy is construed;

    (3)  taxes, fines or penalties imposed by law;

    (4)  **Stock Benefits**;

    (5)  any amount allocated to uncovered loss pursuant to Section X Allocation of the General Terms and Conditions Section;


**CHUBB**

*Power Source$^{sm}$*
**Employment Practices Liability Coverage Section**

  (6) the future compensation or **Benefits** of a claimant who has been or shall be hired, promoted or reinstated to employment pursuant to a settlement, order or other resolution of such **Claim**; or

  (7) any monetary payment for violation of any notice requirement pursuant to or for a notice period under any applicable law, including the Worker Adjustment and Retraining Notification Act or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world.

(O) **Pollutants** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by, the United States Environmental Protection Agency or any state, county, municipality or locality counterpart thereof.  Such substances shall include, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials. **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products and any noise.

(P) **Pollution** means the actual, alleged or threatened discharge, release, escape or disposal of **Pollutants** into or on real or personal property, water or the atmosphere or any direction or request that the **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so.

(Q) **Retaliation** means retaliatory treatment against an **Employee**, **Executive** or **Independent Contractor** on account of such individual:

  (1) exercising his or her rights under law, including but not limited to rights under any workers compensation laws, the Family and Medical Leave Act, or the Americans with Disabilities Act;

  (2) refusing to violate any law;

  (3) having assisted or testified in or cooperated with a proceeding or investigation regarding alleged violations of law by the **Insured Organization**;

  (4) disclosing or threatening to disclose to a superior or to any governmental agency any alleged violations of law; or

  (5) filing any claim against the **Insured Organization** under the Federal False Claims Act or any other similar "whistle blower" federal, state, or local statutory law or common law anywhere in the world.

(R) **Stock Benefits** means any offering, plan or agreement between the **Insured Organization** and any **Executive** or **Employee** which grants stock or stock options or stock appreciation rights as to the **Insured Organization** to such individual, including but not limited to stock options, restricted stock or any other stock grant, but not including employee stock ownership plans or employee stock purchase plans.

(S) **Third Party** means any natural person who is a customer, vendor, service provider or other business invitee of the **Insured Organization**. **Third Party** shall not include **Employees**.

**CHUBB**

*Power Source*<sup>sm</sup>

***Employment Practices Liability Coverage Section***

(T)    **Third Party Claim** means:

   (1)    any of the following:

      (a)    a written demand for monetary damages or non-monetary relief;

      (b)    a civil proceeding commenced by the service of a complaint or similar pleading;

      (c)    an arbitration proceeding; or

      (d)    a formal administrative regulatory or tribunal proceeding commenced by the filing of a notice of charges, formal investigative order or similar document;

      which is brought and maintained by or on behalf of a **Third Party** against an **Insured** for a **Wrongful Act** in connection with any actual or alleged **Third Party Discrimination or Sexual Harassment**, including any appeal therefrom; or

   (2)    a written request received by an **Insured** to toll or waive a statute of limitations, relating to a potential **Third Party Claim** as described in paragraph (1) above.

(U)    **Third Party Discrimination or Sexual Harassment** means:

   (1)    discrimination against a **Third Party** based upon such **Third Party's** race, color, religion, creed, age, sex, disability, marital status, national origin, pregnancy, HIV status, sexual orientation or preference, Vietnam Era Veteran status or other protected military status or other status that is protected pursuant to any federal, state, or local statutory law or common law anywhere in the world; or

   (2)    sexual harassment, including unwelcome sexual advances, requests for sexual favors or other conduct of a sexual nature against a **Third Party**.

(V)    **Workplace Tort** means actual or alleged:

   (1)    employment-related misrepresentation, defamation (including libel and slander), invasion of privacy, negligent evaluation, wrongful discipline or wrongful deprivation of career opportunity; or

   (2)    employment-related negligent retention, supervision, hiring or training, employment-related wrongful infliction of emotional distress, mental anguish or humiliation or failure to provide or enforce consistent employment-related corporate policies and procedures; when alleged as part of an **Employment Claim** for actual or alleged **Wrongful Employment Decision**, **Breach of Employment Contract**, **Discrimination**, **Harassment**, or **Retaliation**.

(W)    **Wrongful Act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by any **Insured Organization** or by any **Insured Person** in his or her capacity as such, or any matter claimed against any **Insured Person** solely by reason of his or her status as such.

(X)    **Wrongful Employment Decision** means the actual, alleged or constructive termination, dismissal, or discharge of employment, demotion, denial of tenure, or failure or refusal to hire or promote. **Wrongful Employment Decision** shall not include **Breach of Employment Contract**.



**CHUBB**

*Power Source*<sup>sm</sup>
*Employment Practices Liability Coverage Section*

---

III.    **EXCLUSIONS**

(A)    No coverage will be available under this Coverage Section for any **Claim**:

(1)    based upon, arising from, or in consequence of any circumstance, if written notice of such circumstance has been given under any policy of which this Coverage Section is a direct or indirect renewal or replacement and if such prior policy affords coverage (or would afford such coverage except for the exhaustion of its limits of liability) for such **Claim**, in whole or in part, as a result of such notice;

(2)    based upon, arising from, or in consequence of a written demand, suit, formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document, an audit conducted by the Office of Federal Contract Compliance Programs or arbitration proceeding pending or order, decree or judgment entered for or against any **Insured** on or prior to the applicable Pending or Prior Litigation Date as set forth in Item 10 of the Declarations or the same or any substantially similar fact, circumstance or situation underlying or alleged therein;

(3)    based upon, arising from, or in consequence of **Pollution**; provided that this Exclusion (A)(3) shall not apply to any **Employment Claim** for **Retaliation**;

(4)    for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed; provided that this Exclusion (A)(4) shall not apply to any emotional distress, mental anguish or humiliation;

(5)    based upon, arising from, or in consequence of any actual or alleged obligation of any **Insured** pursuant to any workers compensation, unemployment insurance, social security, disability benefits or any similar federal, state, or local statutory law or common law anywhere in the world; provided that this Exclusion (A)(5) shall not apply to any **Employment Claim** for **Retaliation**;

(6)    based upon, arising from, or in consequence of the liability of others assumed by any **Insured** under any contract or agreement, either oral or written, except to the extent that an **Insured** would have been liable in the absence of the contract or agreement;

(7)    for any actual or alleged breach of any **Independent Contractor Services Agreement**;

(8)    for any actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Securities Act of 1974 (except Section 510 thereof), the Fair Labor Standards Act (except the Equal Pay Act), the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act, or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world; provided that this Exclusion (A)(8) shall not apply to any **Employment Claim** for **Retaliation**; or

(9)    for any actual or alleged violation of the responsibilities, obligations or duties imposed by the National Labor Relations Act or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world.


**CHUBB**

*Power Source*<sup>sm</sup>
*Employment Practices Liability Coverage Section*

(B)    No coverage will be available under this Coverage Section for **Loss**, other than **Defense Costs**:

(1)    which constitutes **Benefits** due or to become due or the equivalent value of such **Benefits**; provided that this Exclusion (B)(1) shall not apply to any **Employment Claim** for actual or alleged wrongful termination, dismissal or discharge of employment;

(2)    which constitutes costs associated with any accommodation pursuant to the Americans with Disabilities Act or the Civil Rights Act of 1964 or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world;

(3)    which constitutes costs of compliance with any order for, grant of or agreement to provide non-monetary relief; or

(4)    which constitutes severance payments pursuant to an express written obligation in the event of a termination of employment; provided that this Exclusion (B)(4) shall not apply to the extent such payments are negotiated with and consented to by the **Company** as part of a settlement.

(C)    No coverage will be available under this Coverage Section for **Loss**, other than **Defense Costs**, resulting from any **Claim** based upon, arising from, or in consequence of any actual or alleged breach of any written employment contract; provided that this Exclusion (C) shall not apply to the extent an **Insured** would have been liable for such **Loss** in the absence of such written employment contract.

(D)    No coverage will be available under this Coverage Section for any **Third Party Claim** in connection with any actual or alleged price discrimination or violation of any anti-trust statute or other law designed to protect competition or prevent unfair trade practices.

---

**IV.    EMPLOYMENT CLAIM ARBITRATION**

(A)    Any dispute between any **Insured** and the **Company** based upon, arising from or in connection with any actual or alleged coverage under this Coverage Section, including but not limited to any dispute sounding in contract or tort, shall be submitted to binding arbitration.

(B)    The **Insured Organization**, however, shall first have the option to resolve the dispute by non-binding mediation pursuant to such rules and procedures, and using such mediator, as the parties may agree.  If the parties cannot so agree, the mediation shall be administered by the American Arbitration Association pursuant to its then prevailing commercial mediation rules.

(C)    If the parties cannot resolve the dispute by non-binding mediation, the parties shall submit the dispute to binding arbitration pursuant to the rules of the American Arbitration Association, except that the arbitration panel shall consist of one arbitrator selected by the **Insureds**, one arbitrator selected by the **Company**, and a third arbitrator selected by the first two arbitrators.


CHUBB

*Power Source*<sup>sm</sup>
*Employment Practices Liability Coverage Section*

V.    OTHER INSURANCE

Unless specifically stated otherwise, the coverage afforded under this Coverage Section:

(A)    for **Employment Claims**, shall be primary; provided that with respect to that portion of an **Employment Claim** made against any leased or temporary **Employee** or **Independent Contractor**, **Loss**, including **Defense Costs**, payable on behalf of such leased or temporary **Employee** or **Independent Contractor** under this Coverage Section will be specifically excess of and will not contribute with other valid insurance, including but not limited to any other insurance under which there is a duty to defend, unless such other insurance is specifically stated to be in excess over the Limit of Liability of this Coverage Section.

(B)    for **Third Party Claims**, shall be specifically excess of and will not contribute with other valid insurance, including but not limited to any other insurance under which there is a duty to defend, unless such other insurance is specifically stated to be in excess over the Limit of Liability of this Coverage Section.

VI.    COORDINATION OF COVERAGE

Any **Loss** covered under this Coverage Section and either the Directors and Officers Liability Coverage Section or the Fiduciary Liability Coverage Section, if purchased, shall be first covered under this Coverage Section, subject to its terms, conditions and limitations.

**ENDORSEMENT/RIDER**

Coverage Section:  Power Source EPL Coverage Section

Effective date of
this endorsement/rider: January 26, 2012

Executive Risk Indemnity Inc.

Endorsement/Rider No. 1

To be attached to and
form a part of Policy No. 8221-6440

Issued to:  Rhythm and Hues, Inc.

AMEND DEFINITION OF EXECUTIVE ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Executive**, as defined in Subsection II., Definitions of this coverage section is deleted in its entirety and replaced with the following:

**Executive** means any natural person specified below:

(1)     past, present or future duly elected or appointed directors, officers, members of the Board of Managers or management committees of any **Insured Organization** incorporated in the United States of America;

(2)     past, present or future in-house general counsel of any **Insured Organization** incorporated in the United States of America; or

(3)     equivalent positions of (1) or (2) above in any **Insured Organizations** chartered in any other jurisdiction anywhere in the world.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  Power Source EPL Coverage Section

Effective date of
this endorsement/rider: January 26, 2012          Executive Risk Indemnity Inc.

                                                  Endorsement/Rider No. 2

                                                  To be attached to and
                                                  form a part of Policy No. 8221-6440

Issued to:  Rhythm and Hues, Inc.

_____

DELETE EXCLUSION III.(D) ENDORSEMENT

In consideration of the premium charged, it is agreed that Subsection III., Exclusions, of this coverage
section is amended by deleting Exclusion (D) in its entirety.


The title and any headings in this endorsement/rider are solely for convenience and form no part of the
terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.




                                        _____
                                        Authorized Representative




14-02-13016 (03/2007)              Page 1

**ENDORSEMENT/RIDER**

Coverage Section:  Power Source EPL Coverage Section

Effective date of
this endorsement/rider: January 26, 2012          Executive Risk Indemnity Inc.

Endorsement/Rider No. 3

To be attached to and
form a part of Policy No. 8221-6440

Issued to:  Rhythm and Hues, Inc.

_____

VIOLATION OF EMPLOYEE PRIVACY ENDORSEMENT
(DEFENSE COSTS ONLY WITH SUBLIMIT)

In consideration of the premium charged, it is agreed that solely with respect to this Employment
Practices Liability Coverage Section, the following shall apply:

(1)     The **Company's** maximum aggregate liability for all **Defense Costs** on account of all
        **Employment Claims** for **Wrongful Acts** in connection with a "Violation of Employee Privacy" (as
        defined below) shall be $250,000.00, which amount is part of, and not in addition to, the
        **Company's** maximum aggregate Limit of Liability as set forth in Item 4 of the Declarations of the
        General Terms and Conditions Section.

(2)     No coverage will be available under this Coverage Section for **Loss**, other than **Defense Costs**,
        on account of any **Employment Claim** for a **Wrongful Act** in connection with a Violation of
        Employee Privacy.

(3)     For the purposes of this endorsement, paragraph (1) of the definition of **Employment Claim** as
        set forth in Subsection II, Definitions, is deleted and replaced with the following:

        (1) any of the following:

            (a)  a written demand for monetary damages or non-monetary relief, including but not
                 limited to a written demand for reinstatement, reemployment or re-engagement;

            (b)  a civil proceeding commenced by the service of a complaint or similar pleading;

            (c)  an arbitration proceeding; or

            (d)  a formal administrative or regulatory proceeding or tribunal proceeding,
                 commenced by the filing of a notice of charges, formal investigative order or
                 similar document, including, but not limited to, any Equal Employment
                 Opportunity Commission proceeding or any other similar governmental agency
                 located anywhere in the world; provided however that in the context of an audit
                 conducted by the Office of Federal Contract Compliance Programs ("OFCCP"),
                 **Employment Claim** shall be limited to a Notice of Violation or Order to Show
                 Cause or written demand for monetary damages or injunctive relief;

        which is brought and maintained by or on behalf of any past, present or prospective
        **Employee**, **Executive** or **Independent Contractor** or by the OFCCP, with respect to
        paragraph (d) above, against any **Insured** for a **Wrongful Act** in connection with any
        actual or alleged **Breach of Employment Contract**, **Discrimination**, **Harassment**,

Retaliation, **Workplace Tort**, **Wrongful Employment Decision**, or Violation of
Employee Privacy (even if such **Wrongful Act** is related to allegations in a criminal
proceeding), including any appeal therefrom; or

(4)    Subsection VI, Coordination of Coverage, is amended to include the following:

Additionally, any **Loss** otherwise covered pursuant to the terms of this endorsement and
the *CyberSecurity by Chubb*SM policy, if purchased, shall be first covered under this
Coverage Section, subject to its terms, conditions, and limitations.

(5)    For the purposes of this endorsement, the following terms shall have the meanings set forth
below:

"Violation of Employee Privacy" means an **Insured Organization's** failure to:

(i)    secure an **Employee's** "Record" (as defined below) from actual or potential
unauthorized access by another person or by an organization which results in
injury to such **Employee**; or

(ii)    provide notice as required by any state, federal or local statutory law or common
law anywhere in the world to an **Employee** whose Record was accessed or may
have been accessed by an unauthorized person.

"Record" means an **Employee's** first name or first initial, and last name, in combination
with:

(i)    their social security number, driver's license number or other personal
identification number (including an employee identification number or student
identification number);

(ii)    their financial account number (including a bank account number, retirement
account number, or healthcare spending account number);

(iii)    their credit, debit or other payment card number; or

(iv)    any individually identifiable health information, pursuant to the Health Insurance
Portability and Accountability Act of 1996 ("HIPAA"), held by the **Insured
Organization**,

when any such information in (i) through (iv) above is intended by the **Insured
Organization** to be accessible only by persons or organizations specifically authorized
by the **Insured Organization** to have access to such information.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the
terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  Power Source EPL Coverage Section

Effective date of
this endorsement/rider: January 26, 2012

Executive Risk Indemnity Inc.

Endorsement/Rider No. 4

To be attached to and
form a part of Policy No. 8221-6440

Issued to:  Rhythm and Hues, Inc.

_____

AMEND REPORTING PROVISION ENDORSEMENT

In consideration of the premium charged, it is agreed that solely with respect to this Employment
Practices Liability Coverage Section the following shall apply:

(1)    Subparagraph (A)(1) of Subsection VII, Reporting, of the General Terms and Conditions Section
is amended to include the following:

Notwithstanding the foregoing and solely with respect to any **Employment Claim** that is
brought as a formal administrative or regulatory proceeding commenced by the filing of a
notice of charges, the **Insureds**, shall, as a condition precedent to exercising any right to
coverage under this Coverage Section, give written notice thereof to the **Company** during the
**Policy Period**, or, if applicable, in no event later than the earliest of the following dates:

(i)    if this coverage section is renewed, 180 days after the end of the **Policy Period**,

(ii)    if this coverage section expires (or is otherwise terminated) without being renewed
and if no Extended Reporting Period is purchased, sixty (60) days after the effective
date of such expiration or termination; or

(iii)    the expiration date of the Extended Reporting Period, if purchased.

With respect to the reporting of any **Claim** under this Coverage Section, it is agreed that in
determining whether the reporting of such **Claim** has been timely made, the **Company** shall
make such determination by applying the law of any jurisdiction which has a substantial
relationship to the **Insureds**, the **Company**, this Policy or the **Claim** and which is most
favorable to such determination of timeliness.

(2)    Nothing in this Endorsement is intended nor shall it be construed to violate the applicable laws of
any state and therefore, notwithstanding the provisions of any "Amendatory Endorsement"
attached to this Policy (the "Amendatory"), the terms of this Endorsement shall supersede and
take precedence over the provisions, if any, of the Amendatory applicable to the reporting and
notice of claims.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  Power Source EPL Coverage Section

Effective date of
this endorsement/rider: January 26, 2012          Executive Risk Indemnity Inc.

Endorsement/Rider No. 5

To be attached to and
form a part of Policy No. 8221-6440

Issued to:  Rhythm and Hues, Inc.

AMEND EXCLUSION (A)(9) ENDORSEMENT

In consideration of the premium charged, it is agreed that Exclusion (A)(9) of Subsection III, Exclusions, of this Coverage Section is amended to add the following exception:

provided, that this Exclusion (A)(9) shall not apply to any **Employment Claim** for **Retaliation**, provided that such **Employment Claim** for **Retaliation** is not brought by or on behalf of five (5) or more **Employees**;

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  Power Source EPL Coverage Section

Effective date of
this endorsement/rider: January 26, 2012          Executive Risk Indemnity Inc.

Endorsement/Rider No. 6

To be attached to and
form a part of Policy No. 8221-6440

Issued to:  Rhythm and Hues, Inc.

_____

POWER SOURCE ADVANTAGE FOR EMPLOYMENT PRACTICES LIABILITY ENDORSEMENT

In consideration of the premium charged, it is agreed that solely with respect to this Employment
Practices Liability Coverage Section, the following coverage enhancements are being made:

| AMEND SETTLEMENT PROVISION |
| --- |

1.     Subparagraph (2) of paragraph (A) of Subsection IX., Defense and Settlement, of the General
       Terms and Conditions, is deleted and replaced with the following:

       (2)  The **Company** may make any investigation it deems necessary and may, with the
            consent of the **Insured**, make any settlement of any **Claim** it deems expedient.

| AMEND REPRESENTATIONS AND SEVERABILITY SUBSECTION |
| --- |

2.     Subparagraph (2) of paragraph (B) of Subsection XII., Representations and Severability, of the
       General Terms and Conditions Section is deleted and replaced with the following:

       (2)  only the knowledge possessed by the director of human resources, in-house general
            counsel, risk manager, president, or any equivalent position of the foregoing, of any
            **Insured Organization** or the knowledge possessed by the person(s) who signed the
            written application(s) for this Policy shall be imputed to all **Insured Organizations** for
            purposes of determining if coverage is available.

| AMEND DEFINITION OF HARASSMENT |
| --- |

3.     The definition of **Harassment**, as set forth in Subsection II, Definitions, is amended by deleting
       subparagraph (2) and replacing it with the following:

       (2)  workplace harassment, including work related harassment or bullying of a non-sexual
            nature that interferes with performance or creates an intimidating, hostile or offensive
            working environment within the **Insured Organization**.

## AMEND DEFINITION OF LOSS

4.      The definition of **Loss**, as set forth in Subsection II, Definitions, is amended to include the following:

> Solely with respect to a "Mass or Class Action" (as defined below), **Loss** shall also include the reasonable and necessary external costs of training, education, sensitivity or minority development or diversity programs required under the terms of a settlement, judgment or consent decree; provided that the **Company's** maximum aggregate liability for all such **Loss** on account of all Mass or Class Actions shall be shall be the lesser of either twenty-five percent (25%) of the maximum aggregate limit of liability set forth in Item 4.(b) of the Declarations of the General Terms and Conditions or one million dollars ($1,000,000) and such amount is part of, and not in addition to, the **Company's** maximum aggregate limit of liability set forth in Item 4.(b) of the Declarations of the General Terms and Conditions.

5.      For the purposes of the foregoing paragraph, the term "Mass or Class Action" means any **Claim** brought or maintained:

> (a) by or on behalf of five or more natural persons who are acting in concert, whether or not such natural persons are represented by one or more legal counsel;

> (b) by or on behalf of one to four natural persons if any of such natural persons are making a pattern and practice or systemic discrimination allegation and are seeking monetary relief on behalf of a class or group of complainants in order to resolve such **Claim**, whether or not such natural persons are represented by one or more legal counsel; or

> (c) by a governmental entity, department or agency making a pattern and practice or systemic discrimination allegation or seeking monetary relief on behalf of a class or group of complainants in order to resolve such **Claim**.

## AMEND DEFINITION OF WORKPLACE TORT

6.      The definition of **Workplace Tort** as set forth in Subsection II, Definition, is amended as follows:

> (1)     Subparagraph (1) is deleted and replaced with the following:

>> (1) employment-related: misrepresentation, defamation (including libel and slander), invasion of privacy (including the unauthorized use or disclosure of an employee's medical information in violation of the Health Insurance Portability and Accountability Act ("HIPAA")), negligent evaluation, wrongful discipline, or wrongful deprivation of career opportunity; or

> (2)     The following subparagraph is added as follows:

>> (3) employment-related false imprisonment, when alleged as part of an **Employment Claim** for any actual or alleged **Wrongful Employment Decision**, **Breach of Employment Contract**, **Discrimination**, **Harassment**, or **Retaliation**.

## ADD DOMESTIC PARTNER COVERAGE

7.      The definition of **Insured Person** in Subsection II, General Definitions, of the General Terms and Conditions is deleted and replaced with the following:

**Insured Person** shall have the meaning ascribed to that term in each Coverage Section. Solely with respect to any **Liability Coverage Section**, coverage for an **Insured Person** shall also include coverage for:

(1)  the lawful spouse or **Domestic Partner** of such **Insured Person**, if named as a co-defendant with such **Insured Person** solely by reason of such spouse's or **Domestic Partner's** status as a spouse or **Domestic Partner**, or such spouse's or **Domestic Partner's** ownership interest in property which is sought by the claimant as recovery for an alleged **Wrongful Act** of such **Insured Person**; and

(2)  in the event of the death, incapacity or bankruptcy of an **Insured Person**, the estate, heirs, legal representatives or assigns of such **Insured Person**;

but any such coverage shall apply only with respect to a **Wrongful Act** of such **Insured Person**. All terms and conditions of this coverage section, including without limitation the Deductible Amount, applicable to **Loss** incurred by the **Insured Person**, shall also apply to loss incurred by such spouses or Domestic Partners, estates, heirs, legal representatives and assigns of such **Insured Person**.

8.   For purposes of the foregoing amended definition of **Insured Person**, **Domestic Partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Insured Organization**.

---

**ADD WORKPLACE VIOLENCE EXPENSE COVERAGE**

9.   Subsection I, Insuring Clauses, shall be amended to add the following Insuring Clause:

Workplace Violence Expense Coverage

The **Company** shall reimburse the **Parent Corporation** for "Workplace Violence Expenses" (as defined below) incurred by an **Insured Organization** resulting from any "Workplace Violence" (as defined below); provided that the **Company's** maximum aggregate liability for all Workplace Violence Expenses shall not exceed $250,000.00, which amount is part of, and not in addition to, the **Company's** maximum aggregate Limit of Liability as set forth in Item 4.(b) of the Declarations of the General Terms and Conditions.

10.   No Deductible Amount shall apply to Workplace Violence Expenses; provided however, if different parts of a single **Claim** are subject to different Deductible Amounts, the applicable Deductible Amounts will be applied separately to each part of such **Claim**, but the sum of such Deductible Amounts shall not exceed the largest applicable Deductible Amount as set forth in Item 8 of the Declarations of the General Terms and Conditions.  Such Deductible Amount shall be borne by the **Insureds** uninsured and at their own risk.

11.   For the purposes of the Workplace Violence Expense Coverage, exclusion (A)(4) of Subsection III, Exclusions, is deleted and replaced with the following:

(A)(4)  based upon, arising from, or in consequence of bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed; provided that this Exclusion (A)(4) shall not apply to any emotional distress, mental anguish or humiliation resulting from any **Discrimination**, **Harassment**, **Retaliation**, **Workplace Tort**, **Wrongful Employment Decision**, or **Third Party Discrimination** or **Sexual Harassment** committed, attempted, or allegedly committed or attempted by an **Insured** and alleged in any **Employment Claim**, or any **Third Party Claim** if applicable.

12.     Subsection VI, Coordination of Coverage, is amended to include the following:

> Additionally, any Workplace Violence Expenses covered pursuant to the terms of this endorsement and the **Workplace Violence Expense Coverage Section**, if purchased, shall be first covered under this Coverage Section, subject to its terms, conditions, and limitations.

13.     The terms and conditions of paragraph (A) of Subsection IX, Defense and Settlement, of the General Terms and Conditions shall not apply to the coverage for "Workplace Violence Expenses" (as defined below) afforded pursuant to the Workplace Violence Expense Coverage Insuring Clause as set forth in paragraph 9. of this endorsement.

14.     For the purposes of the Workplace Violence Expense Coverage, the following terms shall apply:

"Workplace Violence" means any intentional and unlawful act:

    (i)   of deadly force involving the use of lethal weapon; or

    (ii)  the threat of deadly force involving the display of a lethal weapon,

which occurs on or in the "Premises" (as defined below) and which did or could result in bodily injury or death to an **Insured Person**.

"Workplace Violence Expenses" means the reasonable fees and expenses, or cost of:

    (i)    an independent security consultant for ninety (90) days following the date Workplace Violence occurs;

    (ii)   an independent public relations consultant for ninety (90) days following the date Workplace Violence occurs;

    (iii)  a counseling seminar for all **Employees** conducted by an independent consultant following a Workplace Violence;

    (iv)  independent security guard services for up to fifteen (15) days; and

    (v)   an independent forensic analyst.

"Premises" means the buildings, facilities or properties occupied by an **Insured Organization** in conducting its business.

15.     For the purposes of Workplace Violence Expense Coverage, no coverage will be available under this Coverage Section for:

    (a)  any Workplace Violence which occurs at any location other than the Premises;

    (b)  **Loss** arising from declared or undeclared war, civil war, insurrection, riot, civil commotion, rebellion or revolution, military, naval or usurped power, governmental intervention, expropriation or nationalization;

    (c)  legal costs, judgments and settlements incurred as the result of any claim, suit or judicial action brought against an **Insured Organization** in connection with Workplace Violence; or

    (d)  **Loss** resulting from the use or threat of force or violence occurring on the Premises for the purpose of demanding money, securities or property.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  Power Source EPL Coverage Section

Effective date of
this endorsement/rider: January 26, 2012        Executive Risk Indemnity Inc.

Endorsement/Rider No. 7

To be attached to and
form a part of Policy No. 8221-6440

Issued to:  Rhythm and Hues, Inc.

---

AMEND EMPLOYEE DEFINITION ENDORSEMENT

In consideration of the premium charged, it is agreed that the definition of **Employee**, as set forth in Subsection II, Definitions, of this Coverage Section is deleted and replaced with the following:

> **Employee** means any natural person whose labor or service is engaged by and directed by the **Insured Organization**, including part-time, seasonal, leased and temporary employees as well as interns and volunteers, but only while such natural person is acting in his or her capacity as such.  **Employee** shall not include any **Independent Contractor**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  Power Source EPL Coverage Section

Effective date of
this endorsement/rider: January 26, 2012          Executive Risk Indemnity Inc.

Endorsement/Rider No. 8

To be attached to and
form a part of Policy No. 8221-6440

Issued to:  Rhythm and Hues, Inc.

_____

AMEND DEFINITION OF LOSS ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)      The first sentence of the definition of **Loss**, as set forth in Subsection II., Definitions, of this
         Coverage Section, is amended to include the amount constituting back pay and front pay, which
         any **Insured** becomes legally obligated to pay as a result of any **Claim** made against any
         **Insured** for **Wrongful Acts**.

(2)      The second sentence beginning with the phrase "**Loss** does not include:" shall remain
         unchanged.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the
terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  Power Source EPL Coverage Section

Effective date of
this endorsement/rider: January 26, 2012        Executive Risk Indemnity Inc.

Endorsement/Rider No. 9

To be attached to and
form a part of Policy No. 8221-6440

Issued to:  Rhythm and Hues, Inc.

---

EMPLOYMENT PRACTICES LIABILITY COVERAGE SECTION ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)    Subparagraph (2) of Section II Definitions (M) of the Coverage Section identified above is amended to read in its entirety as follows:

    (2)    with respect to Insuring Clause (A), and Insuring Clause (B) if applicable, any **Independent Contractor**, but only if the **Insured Organization** agrees in writing, prior to or no later than thirty (30) days after the **Employment Claim** or **Third Party Claim** is made, to indemnify the **Independent Contractor** for liability arising out of any **Employment Claim** or **Third Party Claim**.

(2)    Section III Exclusions (A)(4) of the Coverage Section identified above is amended to read in its entirety as follows:

    (4)    for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed; provided that this Exclusion (A)(4) shall not apply to any emotional distress, mental anguish or humiliation resulting from any **Discrimination**, **Harassment**, **Retaliation**, **Workplace Tort**, **Wrongful Employment Decision** or **Third Party Discrimination or Sexual Harassment** committed, attempted, or allegedly committed or attempted by an **Insured** and alleged in any **Employment Claim,** or any **Third Party Claim** if applicable;

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

---

Authorized Representative

14-02-6224 (10/2001)        Page 1

ENDORSEMENT

Coverage Section:  Power Source EPL Coverage Section

Effective date of
this endorsement: January 26, 2012          Company:  Executive Risk Indemnity Inc.

Endorsement No. 10

To be attached to and
form a part of Policy No. 8221-6440

Issued to:  Rhythm and Hues, Inc.

_____

AMEND DEFINTION OF EMPLOYMENT CLAIM ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Employment Claim**, as defined in Section II.
Definitions (G) of the Coverage Section identified above, is amended to read in its entirety as follows:

    (G)    **Employment Claim** means:

        (1)    any of the following:

            (a)    a written demand for monetary damages or non-monetary relief,
including but not limited to a written demand for reinstatement,
reemployment or re-engagement;

            (b)    a civil proceeding commenced by the service of a complaint or similar
pleading;

            (c)    a criminal proceeding outside the United States of America commenced
by a return of an indictment or information or similar document;

            (d)    an arbitration proceeding; or

            (e)    a formal administrative or regulatory proceeding or tribunal proceeding,
commenced by the filing of a notice of charges, formal investigative order
or similar document, including, but not limited to, any Equal Employment
Opportunity Commission proceeding or any other similar governmental
agency located anywhere in the world; provided however that in the
context of an audit conducted by the Office of Federal Contract
Compliance Programs ("OFCCP"), **Employment Claim** shall be limited
to a Notice of Violation or Order to Show Cause or written demand for
monetary damages or injunctive relief;

        which is brought and maintained by or on behalf of any past, present or
prospective **Employee, Executive** or **Independent Contractor** or by the
OFCCP, with respect to paragraph (e) above, against any **Insured** for a
**Wrongful Act** in connection with any actual or alleged **Breach of Employment
Contract, Discrimination, Harassment, Retaliation, Workplace Tort** or

D33875 (12/2004)          Page 1

**Wrongful Employment Decision** (even if such **Wrongful Act** is related to allegations in a criminal proceeding), including any appeal therefrom; or

(2)      a written request received by an **Insured** to toll or waive a statute of limitations, relating to a potential **Employment Claim** as described in paragraph (1) above.

**Employment Claim** shall not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

ENDORSEMENT

Coverage Section:  Power Source EPL Coverage Section

Effective date of
this endorsement: January 26, 2012          Company:  Executive Risk Indemnity Inc.

Endorsement No. 11

To be attached to and
form a part of Policy No. 8221-6440

Issued to:  Rhythm and Hues, Inc.

---

AMEND DEFINITION OF THIRD PARTY CLAIM ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Third Party Claim**, as defined in Section II. Definitions (T) of the Coverage Section identified above, is amended to read in its entirety as follows:

(T)    **Third Party Claim** means:

(1)    any of the following:

(a)    a written demand for monetary damages or non-monetary relief;

(b)    a civil proceeding commenced by the service of a complaint or similar pleading;

(c)    a criminal proceeding outside the United States of America commenced by a return of an indictment or information or similar document;

(d)    an arbitration proceeding; or

(e)    a formal administrative regulatory or tribunal proceeding commenced by the filing of a notice of charges, formal investigative order or similar document;

which is brought and maintained by or on behalf of a **Third Party** against an **Insured** for a **Wrongful Act** in connection with any actual or alleged **Third Party Discrimination or Sexual Harassment**, including any appeal therefrom; or

(2)    a written request received by an **Insured** to toll or waive a statute of limitations, relating to a potential **Third Party Claim** as described in paragraph (1) above.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

D33876 (12/2004)              Page 1

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067.

A true and correct copy of the foregoing documents described as **LIMITED OPPOSITION OF AWTR LIQUIDATION TRUST TO FORMER DIRECTORS' AND OFFICERS' MOTIONS [DOCKET NOS. 653 AND 655] FOR RELIEF FROM THE AUTOMATIC STAY TO PERMIT ADVANCEMENT OF REASONABLE DEFENSE COSTS** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below**:**

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On April 14, 2015, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Ana B Acevedo    aacevedo@omm.com
- Yolanda S Aguilar    wayne.smith@warnerbros.com
- David E Ahdoot    dahdoot@bushgottlieb.com, rsanthon@bushgottlieb.com
- Todd M Arnold    tma@lnbyb.com
- Lorie A Ball    LBall@robinskaplan.com
- Vivian Bodey    vivian.bodey@irscounsel.treas.gov
- Lisa W Chao    lisa.chao@doj.ca.gov
- Shawn M Christianson    cmcintire@buchalter.com, schristianson@buchalter.com
- Gail L Chung    GL@outtengolden.com, JXH@outtengolden.com;rmasubuchi@outtengolden.com;kdeleon@outtengolden.com
- Ronald Clifford    rclifford@blakeleyllp.com, ecf@blakeleyllp.com;seb@blakeleyllp.com;info@ecf.inforuptcy.com
- Brian L Davidoff    bdavidoff@greenbergglusker.com, kwoodson@greenbergglusker.com;calendar@greenbergglusker.com;jking@greenbergglusker.com
- Lisa Hill Fenning    Lisa.Fenning@aporter.com, Jean.Kellett@aporter.com
- H Alexander Fisch    Alex.Fisch@doj.ca.gov
- Anthony A Friedman    aaf@lnbyb.com
- Scott F Gautier    sgautier@robinskaplan.com
- Barry S Glaser    bglaser@swesq.com, erhee@swesq.com
- Fredric Glass    fglass@fairharborcapital.com
- Melanie Scott Green    Melanie.green@usdoj.gov
- Brian T Harvey    bharvey@buchalter.com, IFS_filing@buchalter.com;dbodkin@buchalter.com
- Michael C Heinrichs    mheinrichs@omm.com
- James Andrew Hinds    jhinds@jhindslaw.com, zbilowit@jhindslaw.com
- Ivan L Kallick    ikallick@manatt.com, ihernandez@manatt.com
- Gary E Klausner    gek@lnbyb.com
- Jeffrey A Krieger    jkrieger@ggfirm.com, kwoodson@greenbergglusker.com;calendar@greenbergglusker.com;jking@greenbergglusker.com
- Mary D Lane    mal@msk.com, mec@msk.com
- Dare Law    dare.law@usdoj.gov, ron.maroko@usdoj.gov
- John B Marcin    jbm@marcin.com
- C John M Melissinos    jmelissinos@greenbergglusker.com, kwoodson@greenbergglusker.com;calendar@greenbergglusker.com;jking@greenbergglusker.com
- C John M Melissinos    jmelissinos@greenbergglusker.com, kwoodson@greenbergglusker.com;calendar@greenbergglusker.com;jking@greenbergglusker.com
- Katie Nownes    katie@omnimgt.com
- Danielle A Pham    dpham@gordonsilver.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                        **F 9013-3.1.PROOF.SERVICE**

- Courtney E Pozmantier    cpozmantier@greenbergglusker.com,
  kwoodson@greenbergglusker.com;jking@greenbergglusker.com;calendar@greenbergglusker.com
- Courtney E Pozmantier    cpozmantier@greenbergglusker.com,
  kwoodson@greenbergglusker.com;jking@greenbergglusker.com;calendar@greenbergglusker.com
- David M Reeder    david@reederlaw.com, jessica@reederlaw.com
- Victor A Sahn    vsahn@sulmeyerlaw.com,
  agonzalez@sulmeyerlaw.com,agonzalez@ecf.inforuptcy.com;asokolowski@sulmeyerlaw.com;vsahn@
  ecf.inforuptcy.com
- Paul R Shankman    pshankman@jhindslaw.com
- Claire E Shin    cshin@greenbergglusker.com,
  jking@greenbergglusker.com;kwoodson@greenbergglusker.com;calendar@greenbergglusker.com
- Lori Sinanyan    lsinanyan@jonesday.com, lsinanyan@ecf.inforuptcy.com
- Alan D Smith    adsmith@perkinscoie.com,
  DocketLA@perkinscoie.com,nsaldinger@perkinscoie.com,bcosman@perkinscoie.com
- Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com
- Angela J Somers    asomers@rctlegal.com, lbroussard@rctlegal.com;abahr@rctlegal.com
- Scott J Spolin    spolin@sposilco.com, meglic@sposilco.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Richard Lee Wynne    rlwynne@jonesday.com, sjperry@jonesday.com
- Barouir B Yeretzian    byeretzian@jhindslaw.com, yeretzian@gmail.com

**2.** **SERVED BY UNITED STATES MAIL**:  On April 14, 2015, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

| | |
|---|---|
| RSN - Counsel for Legendary Pictures, LLC | Counsel for Raymond Feeney |
| Hamid R. Rafatjoo | Jonathan A. Shapiro |
| Keith C. Owens | Joshua Thomas Foust |
| Jennifer L. Nassiri | MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC |
| VENABLE LLP | 44 Montgomery Street, 36th Floor |
| 2049 Century Park East, Suite 2100 | San Francisco, CA 94104 |
| Los Angeles, CA 90067 | |

**3.** **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on April 14, 2015, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Served by Personal Delivery
Hon. Neil W. Bason
United States Bankruptcy Court
255 E. Temple Street, Chambers 1545
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 14, 2015 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                **F 9013-3.1.PROOF.SERVICE**